TYNER and another, Respondents, vs. COTTER and another, Executrix, etc., Appellants.

*November 27 — December 14, 1886.*

*Vendor and purchaser of land: Fraudulent representations as to title: Quitclaim deed: Incumbrance ripening into paramount title: Damages: Timber cut from lands forfeited to state.*

1. One who was induced to purchase land by the vendor's false and fraudulent representations that he had a perfect title, may recover damages for such fraud even though the vendor gave only a quitclaim deed, having refused to give a deed with covenants.

2. Such purchaser is not bound to investigate the vendor's title, but has the right to rely upon his representations; and if, by reason of such reliance and without the purchaser's knowledge, an incumbrance ripens into a paramount title, it is no defense to the purchaser's claim for damages that he might have discharged such incumbrance by paying a much smaller sum.

3. Plaintiffs purchased school lands from the defendants relying upon representations of the latter that full payment therefor had been made to the state. But a part of the purchase money had been paid to the state, and before the plaintiffs discovered that fact the lands were forfeited for nonpayment of the balance. In the meantime, however, the plaintiffs had cut timber from the lands and sold and received payment for it, but had taken no other possession, and were not in the actual possession of the land when they brought this action to recover damages for the fraud of the defendants. *Held*, that they were entitled to recover, as such damages, the purchase money, with interest from the time of payment. Not having been compelled to account to the state or its grantees for the timber cut and sold, they could not in this action recover the expense of such cutting.

APPEAL from the Circuit Court for *Lincoln* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This action was brought by the vendees of certain real estate described in the complaint to recover damages on account of fraudulent representations alleged to have been made by the vendors at the time of making the sale, and upon which the vendees relied in making their purchase.

The prominent facts alleged are that the defendants sold and conveyed to the plaintiffs eight forty-acre tracts of land for the consideration of $750, and induced the plaintiffs by fraud to accept a deed without any covenants of warranty for the same. These tracts of land were lands belonging to the school fund of this state. At the time of the sale the defendants held certificates of sale from the state upon which only one fourth of the purchase money had been paid, and at the time the deed was made to the plaintiffs these contracts were subject to forfeiture on account of the nonpayment of the interest due to the state.

The principal value of these lands consisted in the value of the pine and other timber standing thereon. The fact was known to all the parties, and it was also known to the defendants that the plaintiffs were purchasing the lands for

the purpose of cutting and removing the timber therefrom immediately. The false representations relied upon by the plaintiffs, and on account of which they seek to recover damages, relate to the payment of the entire purchase money by the defendants to the state for the purchase of these lands at or before the time of the conveyance to the plaintiffs by the defendants. The plaintiffs claimed, in their complaint and on the trial, that the defendants, at the time of the sale, stated to them that the lands had been paid for in full and that the defendants had a perfect title to them, and that, relying upon such statement made by the defendants, they purchased the lands, paid for them, and accepted a deed without covenants of warranty on such purchase.

The case was tried by the court without a jury, and the learned circuit judge, after hearing the evidence, made, among others, the following findings of fact:

"9. That the defendants, acting by and through the defendant *John N. Cotter*, who made the aforesaid sale in behalf of himself and said James O'Connor, falsely and fraudulently represented and stated, at the time of making said sale to the plaintiffs, that full payment for the lands hereinbefore described had been made to the state of Wisconsin by said defendants.

"10. That said lands hereinbefore described were, at the time of said sale to the plaintiffs, subject to forfeiture to the state for nonpayment of the remainder of said purchase money and for nonpayment of any interest which should have become due thereon, which the defendants knew at the time of such sale to the plaintiffs.

"11. That the plaintiffs made such purchase from the defendants for the purpose and with the intention of immediately cutting, removing, and selling the timber from said lands which was then standing and growing thereon, and for no other purpose, as the defendants well knew, and the defendants made such sale to the plaintiffs with full knowl-

AUGUST TERM, 1886.          485

Tyner and another vs. Cotter and another, Ex'x, etc.

edge that the plaintiffs could not lawfully cut and sell the timber from said lands while the same were not fully paid for, nor obtain any title to timber or logs so cut.

"12. That the plaintiffs, with the knowledge and consent of defendants, went into possession of said lands immediately after such purchase, and the defendants then and thereafter executed and delivered to the plaintiffs quitclaim deeds of said lands; that said lands were of little or no value at the time of such sale by the defendants to the plaintiffs, except for the timber then standing and growing thereon, and were purchased for the timber only.

"13. That the plaintiffs believed and relied upon the aforesaid representations made by the defendant *John N. Cotter*, and believed and supposed said lands had been fully paid for by the defendants long before the time of such sale to the plaintiffs; and the plaintiffs, believing and relying upon the aforesaid statements and representations of the said *John N. Cotter* as to such payment and the title to said lands, and being deceived thereby, did, by reason thereof, on the 20th day of December, A. D. 1882, pay the defendants for said lands as aforesaid, and for that portion of said purchase money paid for the eight forty-acre tracts hereinbefore described, to wit, the sum of $750, the plaintiffs never received any good or valuable consideration.

"14. That the plaintiffs supposed the lands to have been fully paid for by the defendants according to their said agreement, and, believing their right to the same to be perfect and indefeasible, the plaintiffs allowed said lands to become forfeited to the state of Wisconsin, and never acquired any title thereto or to the timber cut therefrom as aforesaid, from either the defendants or the state, and the plaintiffs never learned or knew of such forfeiture until after said lands had become forfeited.

"15. That the plaintiffs, supposing that the defendants had made full payment to the state for said lands and that

they had good right and title to the timber growing and standing thereon, with the knowledge of the defendants, forthwith proceeded to cut and remove the timber from said lands hereinbefore described, and in good faith performed labor and incurred expense in and about the cutting and removal of said timber, between the 20th day of December, 1882, and May 1, 1883, of the value and to the amount of $3,490.88.

"(16) That the actual value of the logs cut and removed from said lands by the plaintiffs at the time the same were so cut and removed was not less than the aggregate of the expense of cutting and removing the same and the purchase money paid for the land from which said logs were removed.

"(17) That the plaintiffs did not acquire any title to said logs, either from the defendants or the state of Wisconsin, but the plaintiffs made a sale of said logs, and received a payment therefor."

The court further found that the plaintiffs were entitled to recover, as damages, the purchase money paid, viz., $750, and interest thereon from the date of payment.

The defendants excepted to the ninth, tenth, eleventh, thirteenth, and fifteenth findings of fact as not supported by the evidence. The fourteenth finding was excepted to in part, as not supported by the evidence, and the sixteenth and seventeenth were excepted to because they should have included other facts not stated therein. The defendants also excepted to the conclusion of law that the plaintiffs were entitled to recover as damages the $750 and interest.

Judgment was entered in accordance with the findings of fact and conclusions of law, and the defendants appealed.

The cause was submitted for the appellants on the brief of *Bump v. Hetzel*, and for the respondents on that of *Curtis & Curtis*.

To the point that where there are no covenants in the

deed the title is presumed to be at the risk of the grantee, counsel for the appellants cited *Hurd v. Hall,* 12 Wis. 112, 135; *Morrison v. Koch,* 32 id. 254; *Herbst v. Lowe,* 65 id. 316; *Booth v. Ryan,* 31 id. 45; *Baxter v. Aubrey,* 41 Mich. 13. As to the rule of damages, they cited *Barber v. Kilbourn,* 16 Wis. 485; *Castleman v. Griffin,* 13 id. 535; *Ableman v. Roth,* 12 id. 81; 1 Suth. on Dam. 17, 134, 174; 2 id. 574; *Burt v. Dewey,* 40 N. Y. 283; *Sweetman v. Prince,* 26 id. 224; *Clementson v. Streeter,* 59 Wis. 429; *Smith v. Hughes,* 50 id. 620; *Oakes v. Estate of Buckley,* 49 id. 592.

TAYLOR, J. The learned counsel for the appellants insist (1) that the court erred in finding that the respondents were induced to purchase the lands and accept a quitclaim deed therefor by reason of any false representations made by the appellants or either of them; and (2) that if the plaintiffs were entitled to recover, the damages allowed by the court were excessive.

Upon the first point made by the appellants, it is evident that question depends wholly upon the weight of the evidence given on the trial.

After a careful reading of all the evidence in the case, we are not only convinced that there is sufficient evidence to sustain the findings of the learned circuit judge, but we are also of the opinion that the preponderance of the evidence is in favor of the findings. Without any attempt to repeat or analyze the testimony, there are certain undisputed facts proved which render it reasonable to suppose that the representations alleged to have been made, were made. *First,* the original contract, under which the defendants agreed with one of the plaintiffs and the other persons interested that they would purchase and pay for the lands, could be fairly construed to mean that they would make a complete and not partial purchase thereof; *second,* when the purchase was made and the deed given by the appellants, it was under-

stood by all parties that said purchase was made by the respondents with the intent to immediately cut and remove the timber from the lands, and it is admitted that all the parties well knew that the purchasers of school lands from the state had no authority to cut or remove any timber from the lands so purchased until all the purchase money had been first fully paid (see sec. 220, R. S.); and, *third*, the clear preponderance of the evidence shows that the price paid by the respondents for the lands conveyed was the full value of the interest the appellants would have had in such lands if the whole purchase price thereof had been paid by them, and was largely in excess of such value in the condition of the title as it proved to be. These considerations had undoubtedly great weight with the learned circuit judge in determining what credibility should be given to the conflicting statements of the witnesses for the respective parties on the trial. His conclusions, we think, are well sustained by the evidence as a whole.

That the purchaser of real estate may maintain an action to recover damages of his grantor, even when he takes a quitclaim or other deed without covenants upon such purchase, when he has been induced to make the purchase by means of fraudulent representations made by the grantor for the purpose of inducing him to purchase, and when the purchaser relies upon such fraudulent representations, is well settled by authorities. It is not the character or kind of property sold and purchased which gives the purchaser a right of action against the vendor for practicing a fraud upon the vendee in effecting a sale. It is the fraud of the vendor, and not the kind of property sold, which is the foundation of the action. Nor does the fact that the grantor refused to give a deed with covenants release him from liability for his fraud. In *Haight v. Hoyt*, 19 N. Y. 464, 474, the learned judge who wrote the opinion very briefly and forcibly meets that objection as follows: " If a vendor can

be made liable for a defect of title or the existence of incumbrances when he has given no covenants, it does not seem material to inquire whether he expressly refused to give them or whether the omission arose from any other cause. If the purchaser consents to waive the usual covenants, he is none the less entitled to the exercise of good faith and honesty on the part of the vendor."

The following authorities are ample to show the right of the respondents to maintain their action for damages resulting from the false and fraudulent representations made by their grantors, upon which they relied in making the purchase: Dart on Vendors, 378, and cases cited; 1 Story's Eq. Jur. § 208, and cases cited; Rawle on Cov. (4th ed.), 567, 568, and notes; *Whitney v. Allaire,* 1 N. Y. 305; *Doggett v. Emerson,* 3 Story, 700, 733; *Masson v. Bovet,* 1 Denio, 72; *Weber v. Weber,* 47 Mich. 569, 571; *Clark v. Baird,* 9 N. Y. 183, 197; *Grant v. Law,* 29 Wis. 99; *Miner v. Medbury,* 6 Wis. 295; *Hurd v. Hall,* 12 Wis. 135; *Booth v. Ryan,* 31 Wis. 45, 59; *Ward v. Wiman,* 17 Wend. 193; *Wardell v. Fosdick,* 13 Johns. 325, 328; *Culver v. Avery,* 7 Wend. 380; *Pitcher v. Livingston,* 4 Johns. 1; Sedgwick on Damages, (7th ed.), marg. pp. 207, 208.

It is insisted by the counsel for the appellants that the damages awarded to the plaintiffs were excessive, under the circumstances disclosed by the evidence. It is said the plaintiffs have not been disturbed in their possession, and, for aught that is shown, may never be disturbed. The only possession the plaintiffs have ever had of the purchased lands was such possession as they took by cutting and removing the timber from the land. Since that was done, the evidence does not show the plaintiffs in the actual possession of the lands. The court found, as a fact, that all right which the defendants had to the lands had been long since forfeited to the state, and to this part of the findings of the court no exception was taken by the defendants. It ap-

pears that when the action was commenced the plaintiffs were not in the actual possession of the lands, and that the title to the lands was in the state or some grantee of the state, holding adversely to the plaintiffs and defendants in this action. The plaintiffs have no such possession of the premises as will interfere with their recovery of any damages they have legally suffered by the fraud of the defendants.

It is further urged that, as the plaintiffs have removed the timber from the lands and sold the same and received the purchase money therefor, they have suffered no damage. The plaintiffs having obtained no title to the timber cut and removed from their lands, they are liable to the state or the grantees of the state for the value of the timber so cut and removed from said lands. See secs. 219, 220, 222, R. S. 1878. The money received by the plaintiffs for the logs and timber they have wrongfully cut and removed from the lands of the state, and for the value of which they are liable to the state or its grantees, does not in any sense belong to the defendants or inure to their benefit so as to extinguish any claim for damages the plaintiffs may have against them. See *Oakes v. Estate of Buckley*, 49 Wis. 592, 601. The learned circuit judge, under the evidence, rightly refused to award any damages to plaintiffs for their expenditures in cutting the timber from the lands, because there was no evidence in the case showing that they had been compelled to pay either the state or its grantees for the value of the timber removed from the land, and limited the recovery to such damages as the plaintiffs would have been entitled to recover had their deed contained a covenant of seizin and title in the defendants, or a general covenant of warranty against all persons. The evidence showing that the defendants never conveyed, or had the right to convey, the right to cut and remove the timber on the land, and further showing that whatever right they had to the posses-

sion of the land under their contract with the state had been forfeited to the state long before this action was commenced, the plaintiffs had the right, as against the defendants, to abandon the possession to the state as rightful owner, and demand, at least, a return of their purchase money.

It is urged that it was the duty of the plaintiffs to have ascertained the fact that the state had not parted with its title to the defendants, and protected their title by paying the amount due on the contracts with the state. But the evidence shows, and the court has so found, that the plaintiffs did not know the situation of the title or the rights of the state until after all right under the contracts had been forfeited. They were not required to exercise any diligence in investigating as to the real title held by the defendants. They had the right to rely on the representations made by the defendants that the lands had been purchased from the state and paid for in full by the defendants, and if all right to the land was lost by their reliance upon such representations it was not the fault of the plaintiffs, but was of the defendants, who made the false representations. This was expressly held by this court in the case of *McClellan v. Scott*, 24 Wis. 81, 87. There was certainly no greater obligation resting on the plaintiffs, on the representation of the defendants that their title was perfect and the lands paid for, to use diligence in ascertaining the state of the title and perfecting the same by making the necessary payments to the state, than there rests upon the grantee in a deed containing covenants against incumbrances and of general warranty, to ascertain what the incumbrances are and pay them off, to prevent their ripening into a title paramount to the title conveyed to him by the deed. It is the business of the grantor to see that the incumbrances are discharged, and if he suffers them to ripen into a title, and his grantee is evicted by the party holding such title, he is liable to the

grantee on his covenant of general warranty, and must respond in damages to the full amount of the purchase money and interest thereon from the time the incumbrance ripened into an absolute title, in any event, and perhaps for a longer time, depending upon the circumstances; and it is no defense to any portion of those damages that the grantee might have discharged the incumbrance if he would, by paying a very much smaller sum of money before it became a paramount title. Rawle on Cov. (4th ed.), 268–271. The rule is stated by the learned author as follows: "It has, however, been frequently held in courts of law that the purchaser's right to recover his damages cannot be affected by the fact that it was in his power to remove the defect of title or incumbrance, nor even that he had, upon offer, refused to do so." As sustaining this rule, the following cases are cited: *Stewart v. Drake*, 9 N. J. Law, 143; *Miller v. Halsey*, 14 N. J. Law, 48; *Elder v. True*, 32 Me. 104; *Chapel v. Bull*, 17 Mass. 221; *Norton v. Babcock*, 2 Met. 510; *Lloyd v. Quimby*, 5 Ohio St. 265; *Burk v. Clements*, 16 Ind. 132.

In the case of *Lloyd v. Quimby, supra*, the learned court says: "It is true the grantee, while the prior mortgage remained only an incumbrance, might have discharged it if he had possessed the pecuniary ability, and thus saved himself from eviction; but then, so might the grantor. The grantee, whether able or willing or not, was in no way bound to do it, and he had a right to expect that the grantor would do it; while he, the grantor, was bound to do it,— bound by the obligations of his express covenant."

In the case at bar the defendants were bound to make their representations as to the title good. They knew that the plaintiffs bought relying on their representation that the purchase price had been fully paid to the state. Upon this representation the plaintiffs had a right to rely; and, in addition to that, the court has found, upon sufficient

evidence, that the plaintiffs had no knowledge that the state had any claim on these lands as against the title conveyed to them by the defendants until the title so conveyed had been forfeited and lost. Under this state of facts, it is quite clear that the plaintiffs are as much entitled to recover from the defendants the purchase money paid for the imperfect title as they would have been had the defendants warranted the title to them; and, had they shown any further special damages growing out of their reliance upon the fraudulent representation of the defendants, they would undoubtedly have been entitled to such special damages in addition to the purchase money paid. The learned circuit judge limited the damages to the purchase money, because the evidence produced by the plaintiffs did not clearly show that they had suffered any damage other than the loss of the purchase price. We think the appellants have no cause of complaint as to the measure of damages adopted by the circuit court.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 30 N. W. Rep. 782.— REP.

