## B. F. Drenning and J. F. Long, trading as Drenning & Long, v. John Wesley, Appellant.

*Practice, Supreme Court—Assignment of error to entire charge without specification.*

An assignment of error to the entire charge of the court without pointing out any specific error will not be considered by the Supreme Court.

*Deceit—Fraudulent misrepresentations—Damages.*

Where an owner of lots represents to a builder who is about to contract with a purchaser of the lots that the lots are the property of the purchaser, and are clear, whereas the deed to the purchaser had not been delivered, and when it is delivered the owner takes a purchase money mortgage which

enables him to defeat the claim of the builder, the owner is liable in damages to the builder for the amount of the latter's loss, and it is immaterial that the purchase money mortgage was less in amount than the loss, and could have been purchased by the builder.

*New trial—After-discovered evidence—Discretion of court—Review.*

The Supreme Court will not review the discretion of a trial judge in refusing to grant a new trial on account of after-discovered evidence as to the veracity of one of the plaintiffs' witnesses.

Argued Nov. 7, 1898. Appeal, No. 133, Oct. T., 1898, by defendant, from judgment of C. P. No. 2, Allegheny County, April T., 1897, No. 193, on verdict for plaintiffs. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for deceit. Before WHITE, P. J.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* among others were the instructions quoted in the opinion of the Supreme Court.

*E. G. Ferguson* and *Andrew S. Miller,* with them *J. S. Ferguson,* for appellant.

*Henry G. Wasson,* with him *W. K. Jennings,* for appellees.

OPINION BY MR. JUSTICE DEAN, January 2, 1899:
The plaintiffs are contractors and builders; the defendant owned land at Wall station, which he had laid out in building lots, which lots he was selling and offering for sale in July, 1894; of these lots, George W. Galvin had bought from him Nos. 80, 81 and 82. In that month Galvin entered into negotiations with Drenning & Long to erect upon each lot a house, at the price of $1,000 for each. The contract was agreed upon, reduced to writing and signed on July 19, 1894, in Wesley's office. About August 25, following, plaintiffs also made a contract with one Anton Spies, who had bought from Wesley lots in the same plan, being Nos. 146, 147 and 148, to build a house upon each lot, at a price of $3,075 for the three; but one of these houses was finished. Plaintiffs averred and offered evidence tending to prove, that when the Galvin and Spies contracts

were made Wesley represented to plaintiffs, that the lots were clear; that he had traded the three to Galvin for other property of Galvin's; that he had paid a mortgage on Galvin's property on Lang avenue, and gave him the three lots for the balance of his money; that the lots were clear, and that Galvin owned them, and that he would see that Galvin could place a mortgage on the three lots as soon as the houses were finished, to raise money to pay the builders. After this Drenning & Long went to work on the houses,.and completed them by November 13, following, to the satisfaction of Galvin. Plaintiffs also offered evidence tending to prove, that in substance, the same representations were made to them by Wesley as to the Spies lots on August 25, following. It turned out afterwards that Galvin's deed was not delivered to him until August 1, 1894, at which time Wesley took from him a mortgage in the sum of $600 to secure unpaid purchase money. Not long after the completion of the houses, Galvin died. The property was sold under an order of the orphans' court for payment of debts, and the proceeds of sale were not sufficient to satisfy the Wesley mortgage. As to the Spies lots, no deed was delivered to him until August 28, three days after Drenning & Long's contract, at which time Wesley took from Spies a mortgage in the sum of $600 to secure the purchase money. This mortgage Wesley sued out and bought in the property; the entire proceeds of sale were applied to costs. Mechanics' liens were filed against both properties by plaintiffs, but as the purchase money mortgages of Wesley were prior liens, they took nothing by this proceeding, and consequently lost what they had expended in the construction of the houses under both contracts. They then brought this action of trespass against Wesley to recover damages for his alleged false representations.

At the trial there was ample evidence if the jury believed it, to establish the plaintiffs' averments; and there was ample evidence on part of defendant, if the jury believed it, to overthrow plaintiffs' case. The court below impartially submitted the contradictory evidence to the jury, who found for plaintiffs the full amount of their claim, the contract price for the four houses, $4,025, with interest making $4,830. Afterwards on a motion for a new trial, it appeared that G. M. Cote, a witness and subcontractor of lumber for plaintiffs, had received on lum-

ber furnished $1,570.33, for which sum he filed a release of his interest in the verdict; thereupon, the court overruled the motion for a new trial, and entered judgment for the balance. From this judgment defendant appeals assigning five errors.

The first is to the entire charge of the court. No specific error is pointed out to us by this assignment, and therefore no discussion of it is called for.

The second assignment complains of inaccurate and inadequate instruction on the measure of damages, particularly the following: "You gentlemen will take into consideration all the testimony in the case, and decide whether or not the defendant did make false representations to these plaintiffs that the lots were free. If he did, then according to the testimony, that was a falsehood. It was a falsehood that deceived the plaintiffs, and if they, on the faith of his representations, expended their money in building the houses, then they have a just claim upon him." It is argued that the court should have instructed the jury, that as Wesley's mortgages on the four lots on which the houses were erected only amounted to $800, the plaintiffs by paying these off, could have put themselves in precisely the same situation, as if Wesley's representations had been true; therefore, that at most their damages could not have exceeded $800. The argument is without weight. Without regard to the form, in substance, this is an action of deceit; plaintiffs sued to recover from the wrongdoer what his false representations had cost them, that is, what money they had laid out, expended and lost on the faith of the false representation. They were not bound to pay off the mortgages and incumber themselves with property to save him who had deceived them from the consequences of his fraud. This would be shifting the burden from the wrongdoer to the party wronged; would be accomplishing for the wrongdoer the very purpose he had in the falsehood; that is, securing the purchase money of his lots by valuable improvements erected at the expense of the parties who trusted him. If Wesley had before the sale, offered to satisfy his purchase money mortgages, and thus leave the property "clear," as he had represented it to be, plaintiffs' cause of action would have disappeared with the mortgages. But no such offer was made and therefore no duty rested on plaintiffs to run risks in order that the man who had wronged them might **be saved from loss.**

The fourth and fifth assignments are to the refusal of the court to grant a new trial, on account of the after-discovered evidence as to the veracity of Cote, one of the plaintiffs' principal witnesses. This was a matter resting in the discretion of the learned judge who tried the cause, and we will not inquire into it.

All the assignments of error are overruled and the judgment is affirmed.