## HAMBURGER v. BERMAN.

1. EXCHANGE OF PROPERTY—FRAUD—ESTOPPEL—BREACH OF CONTRACT.

Where defendant dealt with property, received in an exchange of property, after discovering plaintiff's alleged false representations relating thereto, his conduct amounted to an affirmance of the contract, and the defense of fraud is not open to him in an action for its breach.

2. SAME—CONTRACTS—VALUES—DAMAGES.

Where an exchange of properties was contracted for, *held,* the values fixed in the contract by the respective parties upon the properties were mere estimates, and were so fixed merely for the purpose of effecting an exchange.

3. SAME—BREACH OF CONTRACT—LIABILITY.

Where defendant contracted to convey certain property, the legal title to which was in a corporation of which he was a minority stockholder, in exchange for other property, he was liable in an action for breach of the contract, on his failure to convey.

4. SAME—DAMAGES—VALUES AS TO DATE OF BREACH.

The true measure of plaintiff's damages was the amount lost through the failure of defendant to carry out his contract; the loss to be ascertained as of the date of the breach.[1]

5. SAME—DAMAGES—INSTRUCTIONS—TRIAL.

Where the court instructed the jury, on the question of damages, that they were to be governed by the evidence, and the witnesses had testified as to the values of the respective properties at or near the time of the breach, the failure of the court to instruct the jury to determine the values as of the date of the breach was not reversible error, in the absence of any preferred request upon that point.

Error to Wayne; Gilday, J., presiding. Submitted June 4, 1918. (Docket No. 8.) Decided September 27, 1918. Rehearing denied January 31, 1919.

Assumpsit by Harry B. Hamburger against Julius Berman for breach of a contract to exchange certain

[1] See note in 38 L. R. A. (N. S.) 465.

real estate.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Robert M. Brownson,* for appellant.

*Butzel & Butzel (Isadore Levin,* of counsel), for appellee.

Plaintiff brought suit to recover damages alleged by him to have been sustained by reason of the breach by the defendant of the following contract:

"Memorandum of agreement, made and entered into this first day of September, in the year one thousand nine hundred and fifteen, by and between Julius Berman of the city of Detroit, county of Wayne, and State of Michigan, as party of the first part, and Harry B. Hamburger of the same place, as party of the second part, witnesseth:

"In mutual consideration of the sum of one ($1.00), dollar to each of the parties hereto respectively paid by the other party, and in consideration of the terms and covenants herein contained, it is hereby agreed as follows:

"The said party of the first part hereby agrees to sell and convey unto the party of the second part the property situated on the northwest corner of Fort street west and Hubbard street, in the city of Detroit, county of Wayne and State of Michigan, same consisting of a three-story brick building and lot having dimensions of approximately one hundred (100) by one hundred and twenty-five (125), for the sum of thirty-six thousand ($36,000.00) dollars, payable as follows:

"By the said party of the second part conveying unto the said party of the first part the property situated at and commonly known as numbers 165, 167 and 169 Benton street, in the said city of Detroit, county of Wayne and State of Michigan, consisting of one brick building and two frame houses and lot having dimensions of approximately fifty-seven (57) feet by ninety-five (95) feet subject to an existing mortgage on same of four thousand ($4,000) dollars.

"The said party of the first part hereby agrees to accept the conveyance of the said Benton street property upon the basis of the valuation of twenty thou-

sand ($20,000.00) dollars, giving the said party of the second part credit for the sum of sixteen thousand ($16,000.00) dollars, at which time the said party of the first part will execute and deliver unto the said party of the second part a warranty deed to said Fort and Hubbard property, free and clear of and from all liens and encumbrances, excepting a certain mortgage thereon in the sum of twenty thousand ($20,000.00) dollars, which mortgage has about five (5) years to run, without any intermediate payments to be made on the principal of said mortgage, until due. Said mortgage bearing interest at 6% per annum, which interest is to be paid semi-annually.

"And it is agreed that upon the delivery to said second party of the warranty deed above mentioned, the said second party will assume the said mortgage and agree to pay the same. Upon the execution and delivery of said warranty deed the said party of the second part agrees to execute and deliver unto the said party of the first part a warranty deed to the said Benton street property, subject to said mortgage of four thousand ($4,000.00) dollars which mortgage the said party of the first part agrees to assume and pay.

"The respective parties hereto are to furnish Burton or Union Trust abstract of title, certified to date forthwith, showing the said properties to be free and clear of and from all liens and encumbrances whatsoever, excepting as aforesaid. The deal to be closed and said warranty deeds to be executed and delivered within one (1) week after the said abstracts of title are delivered by the respective parties hereto.

"Possession of the respective premises to be delivered at the time the said deal is closed.

"In witness whereof, the parties hereto have nereunto set their hands and seals at the city of Detroit, this day and year first above written.

"JULIUS BERMAN,       (L. S.)
"H. B. HAMBURGER."    (L. S.)

Defendant gave notice under the plea of the general issue that he would prove that his signature to said contract was secured through fraud and misrepresentation on the part of the plaintiff. It appears that the so-called Fort street property which defendant negotiated to exchange with plaintiff for the Ben-

ton street property belonged in fact to a corporation known as the Suburban Land Company, one-third of the stock of which belonged to defendant, one-third to one Marshall and one-third to one Dwyer, at the time of its incorporation.  At the time of the trial there were two or three.other stockholders.  The legal title to the Fort street property stood in the name of Elon J. Dwyer, though it was conceded upon all sides that it belonged to the corporation.  The same evening, after the contract in suit was executed, defendant met Marshall, who with himself and Dwyer controlled the corporation owning the Fort street property, and was advised by Marshall that the plaintiff had overreached him in the deal and that he, Marshall, would not consent to going forward with the trade.  Dwyer took the same attitude.  Defendant had lived in the neighborhood of the Benton street property for many years and was acquainted with it.  He made a more particular examination of it on the morning after the execution of the contract and claims to have then discovered that plaintiff had misrepresented certain facts in connection therewith to him.  He, however, did not at that time notify plaintiff that he had been induced to enter into the contract by fraud, and would for that reason refuse to consummate it, neither did he notify him that his associates and co-owners, Marshall and Dwyer, refused to consummate the deal.  On the contrary, he permitted plaintiff to have his abstract of title brought down to date and went with plaintiff to his attorney where deeds were prepared effecting the exchange.  Defendant was unable, however, to persuade his associates to execute a deed of the Fort street property, and then set out to effect a sale of the Benton street property to other parties.  He entered into a written contract on the 4th of September for the sale of the Benton street property for the sum of $18,500.  This deal finally fell through because de-

fendant Berman was not satisfied with the contracts the purchaser was to turn over to him for his equity in the Benton street property. In the following weeks he made further efforts to sell the Benton street property and did not finally repudiate his obligations under the contract in suit until September 25, 1915. Evidence was offered on behalf of both plaintiff and defendant touching the value of the equity in each of the properties, the subject of the exchange, and a verdict was directed by the court in favor of the plaintiff, the jury being instructed that the only question open for their determination was the amount of damages suffered by the plaintiff. The court held that defendant, Berman, by dealing with the Benton street property and offering it for sale after he had discovered the alleged fraudulent representations made to him by plaintiff, must be held to have affirmed the contract and that the defense of fraud was not open to him. The jury rendered a verdict in favor of the plaintiff for $2,500.

BROOKE, J. (*after stating the facts*). We are of opinion that the court was correct in holding that defendant by his dealings with the Benton street property, after his discovery of the alleged fraudulent representations, precluded himself from interposing the defense of fraud, his conduct amounting to an affirmance of the contract. *Foster* v. *Rowley*, 110 Mich. 63, and cases cited. All of defendant's requests were addressed to the question of alleged fraudulent representations made by plaintiff and to the question of plaintiff's good faith in entering into the contract. No request on behalf of the defendant was preferred upon the question of the measure of damages. Upon that point the court instructed the jury as follows:

"So, gentlemen of the jury, it then comes down to a question of the value of the property. It is for you to determine, therefore, what damages the plaintiff has sustained, if any, by reason of the entering into

of this contract. To ascertain and determine that you are to use your judgment from the evidence in the case, the evidence that has been introduced upon the trial of the case as to the value of the respective pieces of property. In determining this, it is your duty to determine it by a preponderance of the evidence; that is, by the weight of the evidence. As to both the value of the Fort street property and of the Benton street property. After having ascertained and determined by a preponderance of the evidence the value of each piece of property, you are then to deduct from the value, for instance, on the Fort street property, the amount of the mortgage on that property, and from the Benton street property the amount of the mortgage that is on that property, and the difference would be the amount of the damages which plaintiff claims to have sustained in this case. You are to arrive at the damages in that manner."

Error is assigned upon this portion of the charge, it being the contention of the defendant that under the contract the transaction amounted to a sale at a fixed price and that the plaintiff, by bringing suit on the contract, thereby ratified and affirmed all of its terms and provisions including the valuation of $20,-000 (subject to a mortgage of $4,000) which he himself placed upon the Benton street property. Under this argument it is contended that:

"Plaintiff cannot now recover substantial damages for the fancied goodness of his bargain by repudiating the very material and binding contract provision as to the agreed value of his equity ($16,000.00), by claiming a substantial diminution thereof within a few days after the execution of this agreement."

It is further urged on behalf of the defendant that the question of good or bad faith of defendant should have been submitted, citing *Hammond* v. *Hannin,* 21 Mich. 374, and *Way* v. *Root,* 174 Mich. 418.

We are of opinion that the contract in essence amounts to an agreement for the exchange of two properties. The values fixed by the respective parties upon the properties were mere estimates and were so

fixed merely for the purpose of effecting an exchange. Defendant's evidence upon the question leaves no doubt that this is what was in the minds of the parties at the time the contract was made. We are further of opinion that the situation of the defendant is not like that considered in *Hammond* v. *Hannin, supra,* but rather is governed by the case of *Dikeman* v. *Arnold,* 78 Mich. 455. The rule as stated in 2 Sutherland on Damages (4th Ed.), page 1988, is as follows:

"If the person selling is in default—if he knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he had power to negotiate a sale; if he has only a contract of the owner to convey, or a bond for a deed; if his contract to sell requires the signature of his wife to bar an inchoate right of dower, or the consent of a third person to render his deed effectual; if he makes his contract without title in the expectation of subsequently being able to acquire it and is unable to fulfill by reason of causes so known, as the want of concurrence of other persons, or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person—in all such cases he is beyond the reach of the principles of *Flureau* v. *Thornhill,* 2 W. Bl. 1078, and is liable to full compensatory damages, including those for the loss of the bargain."

In the case at bar the defendant, when he entered into the contract in suit, knew that the legal title to the Fort street property stood in the name of Dwyer and that the property was actually owned by a corporation in which he was a minority stockholder. Nevertheless, by the execution of the contract, he undertook to convey the same. The true measure of plaintiff's damages was the amount lost through the failure of defendant to carry out his contract, said loss to be ascertained as of the date of the breach. It is urged on behalf of the defendant that nowhere in the charge of the court are the jury instructed to determine the

values of the several properties as of the date of the breach. As before stated, however, no request upon that point was preferred on behalf of the defendant and it clearly appears from an examination of the record that all of the witnesses examined as to value, testified to values at or near the time of the breach. We do not think the jury could have been misled by the charge of the court or that the case should be reversed because more specific instructions were not given.

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.