HAUKLAND *v.* MUIRHEAD.

1. FRAUD — VENDOR AND PURCHASER — MISREPRESENTATION AS TO
TITLE OF LAND ENTITLED VENDEES TO AT LEAST NOMINAL DAM-
AGES.

> If the vendor fraudulently represented that he had a deed
> and was the owner of land sold, and the vendees relied
> thereon, whereas in fact the vendor had only a contract
> interest in the land, the vendees were entitled to recover
> at least nominal damages in an action on the fraud.[1]

2. SAME—DELAY SHORT OF STATUTE OF LIMITATIONS NO BAR TO
RECOVERY.

> Where the vendees, after discovering the fraud, affirmed
> the contract, they did not, by a delay short of the statute
> of limitations, lose their right to recover their damages
> in an action for fraud and deceit.[2]

3. ESTOPPEL—VENDEES JUSTIFIED IN WITHHOLDING PAYMENTS UN-
TIL ASCERTAINING FEE OWNER.

> Where the vendees learned that the vendor was not the
> owner of land sold to them on contract, as fraudulently
> represented, they were justified in withholding further
> payments until they could ascertain from the fee owner
> how much the vendor owed, and by such action they are
> not estopped from asserting the fraud.[3]

4. COMPROMISE AND SETTLEMENT — FRAUD — EVIDENCE—QUESTION
FOR JURY.

> Whether there was a compromise of the vendor's fraud
> in representing to the vendees that he was owner in fee
> of the land sold, when in fact he had only an assignment
> of a contract interest therein, *held*, under the evidence, at
> best a question for the jury in an action for fraud and
> deceit.[4]

5. FRAUD—VENDOR AND PURCHASER — WHETHER VENDEES VOLUN-
TARILY LEFT PREMISES JURY QUESTION.

> In an action by the vendees for fraud and deceit in repre-

---

[1]Fraud, 27 C. J. § 227; [2]Id., 27 C. J. § 139; [3]Estoppel, 21 C. J.
§ 206; [4]Compromise and Settlement, 12 C. J. § 82.

senting that the vendor was the owner in fee of the
land sold, when in fact he had only an assignment of a
contract interest therein, whether the vendees left the
premises voluntarily or because of the judgment of restitu-
tion obtained by the owner in fee, *held*, under the evidence,
a question for the jury.[5]

6. SAME—VENDEES AFFIRMING CONTRACT MAY RECOVER DAMAGES
OCCASIONED BY FRAUD.

Where the vendees, after discovering the fraud, affirmed
the contract, they were entitled, in an action for fraud
and deceit, to recover their damages occasioned by the
fraud, not that with which they had parted.[6]

7. DAMAGES—FRAUD—MEASURE OF DAMAGES.

Where the vendor had only a contract interest in the
land he contracted to sell, but fraudulently represented
to the vendees that he was owner in fee, in an action by
the latter for fraud and deceit, after the fee owner had
taken the land under writ of restitution, the trial judge
properly instructed the jury that plaintiffs were entitled
to recover the value of the premises less the amount they
owed under their contract and less the amount they had
realized from the land during the time they were in pos-
session.[7]

8. SAME—MINIMIZING DAMAGES—NO DUTY ON DEFRAUDED VENDEES
TO PAY RESTITUTION JUDGMENT WHERE RIGHTS NOT DETERMINED
THEREBY.

Where the vendor was guilty of actual fraud in deceiv-
ing the vendees as to the owner in fee, and the out-
standing title could only be bought in piecemeal and the
vendees' rights could only be determined after litigation
with parties strangers to the contract, there was no duty
resting upon the vendees to minimize their loss by satis-
fying the judgment of restitution obtained by the fee
owner without having their rights determined.[8]

Error to Oakland; Gillespie (Glenn C.), J.   Sub-
mitted October 13, 1925.   (Docket No. 51.)   Decided
December 22, 1925.

Case by Nelson Haukland and others against Robert

[5]Fraud, 27 C. J. § 217; [6]Id., 27 C. J. § 250 (Anno); [7]Id., 27
C. J. § 250 (Anno); [8]Id., 27 C. J. § 230.

Muirhead and others for fraud in the sale of real estate.  Judgment for plaintiffs.  Defendants bring error.  Affirmed.

*Robert D. Heitsch* (*John H. Patterson,* of counsel), for appellants.

*E. L. Phillips,* for appellees.

Plaintiffs claim that defendants represented to them that defendant Muirhead was the owner and had a deed to an 80-acre farm in Oakland county, and that they, relying on such representations, entered into an agreement with Muirhead to purchase the farm at an agreed price of $10,000, making the down-payment in equities held by them in Pontiac property at an agreed price of $3,000 with deferred payments over a period of years.  Defendant Muirhead did not in fact own the fee but held a contract by assignment for the purchase of the property upon which contract some $6,700 was still unpaid.  Plaintiffs soon after learned that Muirhead had but a contract interest, but notwithstanding such information they moved on the farm in the spring of 1922 and remained there about a year.  They made no payments either to Muirhead or any one else and it does not appear that Muirhead made any payments on his contract.  When the first installment was due in the fall and Muirhead demanded payment, they insisted on knowing who the fee owner was but he did not give them the desired information and they, apparently under advice of counsel, declined to make payments without knowing they would be safe in making them. In the following spring the fee owners, Thomas R. Ryan and Eleanor Ryan, instituted proceedings before a circuit court commissioner to recover the possession of the premises, making plaintiffs Nelson Haukland and John Kirken and one Walter C. Houghton, to

whom Muirhead has assigned his contract interest in the land, defendants; Muirhead was not made a party to that suit.    Judgment for restitution was entered and it was found that there was due plaintiffs in that suit for principal and interest $720.43, for taxes paid $292, and costs in the sum of $9.30 were taxed.    In the instant suit plaintiffs had verdict and judgment for $2,300.    On a motion for a new trial this was reduced to $1,500.    Defendants review the case here under numerous assignments of error.

FELLOWS, J. (*after stating the facts*).    We shall not discuss the assignments of error dealing with the admission and rejection of testimony.    We find no reversible error in any of these rulings.

Defendants' motion for a directed verdict was properly denied.    If defendants represented that defendant Muirhead held the title to the premises when they all knew he did not, and plaintiffs relied and acted thereon, they are entitled to recover at least nominal damages.    *Stockham* v. *Cheney*, 62 Mich. 10; *Wegner* v. *Herkimer*, 167 Mich. 587.    Plaintiffs not having sought rescission, but, on the contrary, having affirmed, did not by a delay short of the statute of limitations lose their right to recover their damages in an action for fraud and deceit.    *Dayton* v. *Monroe,* 47 Mich. 193.

If plaintiffs learned Muirhead did not have title and had defrauded them by representing that he had, common   prudence   justified   them   in   withholding further payment to him until they could ascertain from the fee owner how much had been paid by him, whether he was in default and such other information as a prudent person who had been defrauded would seek before making further payments to the one who had defrauded him; they are not estopped from asserting the fraud because, after they discovered it, they

exercised common prudence and withheld payments until they had proper information. The question of whether there had been a compromise was at best a question for the jury. It was also a question for the jury whether plaintiffs voluntarily left the premises or left because of the judgment of restitution.

This brings us to the important question in the case, that of damages. The trial judge instructed the jury:

"If your verdict is for plaintiffs, then it will be for you to determine from the evidence the amount of damages suffered by them. Plaintiffs in this suit claim damages for the loss of their interest in the farm premises. In considering what this is, you must first determine the fair market value of the premises from the evidence heard, and then deduct from such value whatever the plaintiffs owed on the farm under their contract with defendant Muirhead. This will give you the value of the plaintiffs' interest therein, and your verdict, if it is for the plaintiffs, will be in whatever sum you find their interest to be, less whatever plaintiffs realized from the farm during the time they were in possession."

Defendants' counsel say this would be a proper instruction were this an action on a covenant but not proper in this action for fraud and deceit. We think it was appropriate to the instant case. Plaintiffs had not rescinded, they had affirmed. They were, therefore, entitled to recover their damages occasioned by the fraud, not what they parted with. *Hammond v. Hannin*, 21 Mich. 374 (4 Am. Rep. 490), involved the breach of an agreement to convey land where the vendor by reason of failure of his title was unable to perform. Mr. Justice COOLEY, who wrote for the court, thus states the general rule:

"There is no doubt that the instruction given by the court is correct as a general rule. Where a breach of contract occurs, the law aims to make compensation adequate to the real injury sustained, and to place the

injured party, so far as money can do it, in the same position he would have occupied if the contract had been fulfilled.    Sedgwick on Damages, 174; *Robinson* v. *Harmon,* 1 Exch. 855; *Lock* v. *Furze,* L. R., 1 C. P. 441; *Hill* v. *Hobart,* 16 Me. 164; *Lewis* v. *Lee,* 15 Ind. 499.

"And where the carrying out of the contract would have given one of the contracting parties the enjoyment of a particular thing, and he has lost it, the damages he will be entitled to are the value of that which he has lost.    *Ibid.,* and see *Engel* v. *Fitch,* L. R., 3 Q. B. 314."

He then points out that an exception to the rule was engrafted by *Flureau* v. *Thornhill,* 2 Wm. Bl. 1078, and that other cases have followed.    But at page 387 he points out that the exceptions apply where the vendor "is guilty of no fraud" and the syllabus thus summarizes the holding:

"Where a vendor in a contract for the sale of land acts in bad faith, the proper measure of damages is the value of the land at the time of the breach; but where the contract was made in good faith, and the vendor is unable to perform it, the measure of damages will be the consideration money and interest, with, perhaps, the costs of investigating the title."

The instant case is planted on the actual fraud of defendants, and the jury by their verdict has found them guilty of an actual fraud.    In the recent case of *Hamburger* v. *Berman,* 203 Mich. 78, where the defendant had contracted to convey property he did not own, the doctrine of the *Hammond Case* was invoked but we held it was not applicable but that the case was controlled by *Dikeman* v. *Arnold,* 78 Mich. 455, and it was there held (quoting from the syllabus):

"The true measure of plaintiff's damages was the amount lost through the failure of defendant to carry out his contract; the loss to be ascertained as of the date of the breach."

We there approved the rule laid down in 2 Sutherland on Damages (4th Ed.), p. 1988, which we again quote:

"If the person selling is in default—if he knew or should have known that he could not comply with his undertaking; if he, being an agent, contracted in his own name, depending on his principal to fulfill his contract merely because he had power to negotiate a sale; if he has only a contract of the owner to convey, or a bond for a deed; if his contract to sell requires the signature of his wife to bar an inchoate right of dower, or the consent of a third person to render his deed effectual; if he makes his contract without title in the expectation of subsequently being able to acquire it and is unable to fulfill by reason of causes so known, as the want of concurrence of other persons; or if he has title and refuses to convey, or disables himself from doing so by conveyance to another person, —in all such cases he is beyond the reach of the principle of *Flureau* v. *Thornhill* and is liable to full compensatory damages, including those for the loss of the bargain."

This is sustained by a long list of authorities cited in the foot-note.    See, also, *Dikeman* v. *Arnold*, 71 Mich. 656.

The perplexing question in the case grows out of the refusal of the court to give the defendants' seventh request.    This dealt with the question of the duty of plaintiffs to minimize their loss; it pointed out that by paying the amount found due the fee owners by the commissioner plaintiffs could have avoided the eviction; it pointed out that plaintiffs were obligated to make payments of taxes and were also obligated to pay installments on the purchase price to some one and asked the court to limit their recovery to the amount they would have been obliged to pay above the amount due by the terms of their contract in order to satisfy the amount found due by the commissioner.    We shall first examine such of the applicable authorities as

we have been able to find in the time at our disposal, neither counsel having cited any directly in point, and will then state our conclusion, limiting it, of course, to the facts of the instant case.     27 C. J. p. 85, in the article on fraud, thus states the rule:

"Damages due not to the fraud but to plaintiff's own fault cannot be recovered.     Since a defrauded party should make a reasonable effort to avoid injury, he cannot recover damages which could have been avoided by reasonable care and are, therefore, to be regarded as not proximately due to the fraud.     But this rule does not require the defrauded party to make more than a reasonable effort to avoid injury, and, therefore, he may properly recover damages which could have been avoided only by active efforts which he was not reasonably required to undertake, such as the resale of property, or the purchase of outstanding incumbrances or titles on property falsely represented to be unincumbered and clear of title."

In *Drenning & Long* v. *Wesley,* 189 Pa. 160 (42 Atl. 13), the action was brought to recover for false representations as to the title to certain lots which were in fact incumbered.     It was said by the court, speaking through Mr. Justice Dean:

"It is argued that the court should have instructed the jury, that as Wesley's mortgages on the four lots on which the houses were erected only amounted to $800, the plaintiffs by paying these off, could have put themselves in precisely the same situation as if Wesley's representations had been true; therefore, that at most their damages could not have exceeded $800. The argument is without weight.     Without regard to the form, in substance, this is an action of deceit; plaintiffs sued to recover from the wrongdoer what his false representations had cost them, that is, what money they had laid out, expended and lost on the faith of the false representation.     They were not bound to pay off the mortgages and incumber themselves with property to save him who had deceived them from the consequences of his fraud.     This would be shifting the burden from the wrongdoer to the party

wronged; would be accomplishing for the wrongdoer the very purpose he had in the falsehood; that is, securing the purchase money of his lots by valuable improvements erected at the expense of the parties who trusted him. If Wesley had, before the sale, offered to satisfy his purchase-money mortgages, and thus leave the property 'clear,' as he had represented it to be, plaintiffs' cause of action would have disappeared with the mortgages. But no such offer was made and therefore no duty rested on plaintiffs to run risks in order that the man who had wronged them might be saved from loss."

In *Burk* v. *Clements*, 16 Ind. 132, it was held that the vendee was not bound to buy in an outstanding incumbrance, but that if he did so he was limited in recovery to the amount paid with perhaps incidental expenses. This in no way conflicts with the able opinion of Chief Justice Shaw in *Norton* v. *Babcock*, 2 Metc. (Mass.) 510. It is true that the latter case dealt with the breach of a covenant instead of fraud, but in *Tyner* v. *Cotter*, 67 Wis. 482 (30 N. W. 782), where the grantor made false representations as to the title and gave but a quitclaim deed it was held that under such circumstances the obligations and liabilities were analogous to those where a covenant had been inserted in the deed.

In *Hubbell* v. *Meigs*, 50 N. Y. 480, the action was brought to recover damages for fraud and deceit in the sale of stock. The stock had a market value but the company was insolvent and the stock as matter of fact was worthless. It was urged in defense that plaintiff should have sold his stock to minimize his loss. But the court overruled such defense and held that he was not bound to perpetrate a fraud on innocent purchasers in order to minimize his loss but could look to the perpetrators of the fraud for his damages and all of them. See, also, *Curtley* v. *Savings Society*, 46 Wash. 50 (89 Pac. 180); *Elder* v.

*True,* 32 Me. 104; *Miller* v. *Halsey,* 14 N. J. Law, 48.

*Knight* v. *Linzey,* 80 Mich. 396 (8 L. R. A. 476), was an action brought to recover damages for fraud and deceit practiced on plaintiff in procuring his signature to a promissory note and it was urged that he should have contested payment of the note and not having done so could not recover. Replying to such contention, it was said by this court:

"If the plaintiff, an innocent party, was defrauded into giving these notes, he was not obliged, upon information obtained from the party who had defrauded him, or any other information short of a certainty, to contest these notes in the hands of a stranger to the transaction of their inception, and who would be presumably an innocent holder of them. He was not compelled to take the chances of two lawsuits to obtain relief from, or redress for, the fraud committed upon him."

If plaintiffs had paid the amount found due they would have satisfied the judgment of restitution without in any way having their rights determined. In order to obtain subrogation and fix their rights, it would have been necessary to proceed in equity along the lines of *Puziol* v. *Kastle,* 231 Mich. 100. Doubtless cases will arise when a duty may rest on one defrauded to minimize his loss, but this is not such a case and we, of course, must limit our holding to the facts in the case before us. Here we have actual fraud, false representations as to title; the outstanding title could only be bought in piecemeal; and the defrauded parties could not have their rights determined without litigation with parties who were strangers to the contract. Under these circumstances it was not the duty of plaintiffs to hazard the payment of money upon such uncertainties in an attempt to minimize a loss to them occasioned by defendants' active fraud. We are not persuaded that the verdict is against the

overwhelming weight of the evidence, or that the amount of it as reduced is excessive.

The other assignments of error have been examined but are found to be without merit.

The judgment will be affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.