No. 17,804.

REGINALD L. HOWARD v. CITY OF BOULDER, ET AL.

(290 P. [2d] 237)

Decided October 17, 1955.   Rehearing denied December 12, 1955.

Mr. MAX D. MELVILLE, Mr. FRED M. WINNER, Mr. WILLIAM G. BERGE, for plaintiff in error.

Messrs. RINN & CONNELL, for defendants in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

ON May 10, 1955, plaintiff in error as plaintiff and as a taxpayer, filed a complaint in his own behalf and in behalf of others similarly situated, for injunction and declaratory relief in the district court against the city of Boulder, a municipal corporation; the individual members of the city council; the director of finance and ex-officio clerk of the city of Boulder and the members of the Committee for Petitioners designated pursuant to the charter of the City of Boulder.

The action was for relief against an initiated amendment to the charter of the city of Boulder, changing the method of electing city councilmen from election at large to election from councilmanic districts geographically created. This attack is based upon a claimed violation of Article XX, Section 5 of the Colorado Constitution, adopted by reference in the Boulder charter, and further, as a violation of section 48 of the charter of the city of Boulder.

Defendants' motion to dismiss or for summary judgment was timely filed, as was their answer, and the entire matter, together with certain stipulated facts, was taken under advisement on July 27, 1955. The trial court, on August 31, 1955, determined all issues before it, including defendants' motion to dismiss, and entered its order dismissing the complaint, and dispensed with motion for new trial. A record on error according to designation was filed in this court; a writ of error issued; and, it being shown the matter is of great public importance, it is now before us for determination.

The charter amendment under attack was adopted at a special municipal election held October 26, 1954, at which election 2,972 votes were cast in favor of, and 2,568 votes were cast against said amendment. This fact is according to a stipulation in the record which also shows that the petition for charter amendment presented to the city council contained signatures in number more than ten per cent of the votes cast at the last gubernatorial election; that the ordinances submitting the proposed amendment to the people were duly enacted by the city council of the city of Boulder; and finally, that three named councilmen had theretofore been duly elected as such, their terms expiring in 1959, and that three other councilmen were duly elected with terms expiring in 1957.

Our hesitancy to interfere with the will, as expressed by a vote of the people, applies forcibly where the people voting are fully aware of what they are voting for or

against. It is contended that the ballot title, submitted to the electors did not contain a clear, concise statement, descriptive of the substance of the proposed amendment. It is contended also that plaintiff as a taxpayer, did not have an interest sufficient to entitle him to bring this action.

As to the latter contention, we can conceive of no greater interest a taxpayer can have than his interest in the form of government under which he is required to live, or in any proposed change thereof. In the last analysis, this interest may well exceed any pecuniary interest he may have. The interest and concern of plaintiff as a taxpayer is not primarily confined to himself alone, but is of "great public concern"; particularly so when it is apparent that the municipality and its officers have avoided doing anything that would raise the question of the validity of their acts under the charter amendment now under attack. If a taxpayer and citizen of the community be denied the right to bring such an action under the circumstances presented by this record, then wrong must go unchallenged, and the citizen and taxpayer reduced to mere spectator without redress. We can think of none who have a better right.

It is not disputed that the city of Boulder, by its charter, adopted the provisions of Article XX of the state Constitution including its provisions concerning amendments. By express language the charter compels compliance with the amendment requirements of Article XX of the state Constitution. The petition filed with the city council contained the full context of the ballot, which disclosed that the proposed amendment would effectuate certain changes in the charter; namely, one councilman to be elected from each of the nine councilmanic districts instead of nine councilmen being elected at large; that a councilman be required to be a taxpayer for two years before his election, whereas formerly he needed only be a qualified elector; the five-year residence requirement is changed to three years; the terms

fixed for councilman are two years instead of six, with three councilmen elected every two years as before; the amendment also removes from office the three councilmen who have four years of their term remaining, and three who have two years of their term remaining.

In the petition as filed with the council for submission to the electorate, while the ballot title was set forth in compliance with the charter provision; the matter was submitted to the people under a ballot title which did not set forth the text and true substance of the amendment. Sections 37-40 of the Boulder charter with reference to ballot titles are as follows:

"TITLE OF BALLOTS. Proposed measures and charter amendments shall be submitted by ballot title. There shall appear upon the official ballot a ballot title which may be distinct from the legal title of any such proposed measure or charter amendment and shall be a clear, concise statement, without argument or prejudice, descriptive of the substance of such measure or charter amendment. The ballot title shall be prepared by the committee of the petitioners if for an initiated or a referendum measure, or by a committee of the council when submitted by the council."

The title actually used for submission to the electorate was as follows:

"FOR AN AMENDMENT to the City Charter of the City of Boulder repealing Sections three (3), four (4), five (5) and thirteen (13) and substituting therefor a system of electing a board of nine councilmen, one to be elected by the voters of the district from each of the nine counclimen's district for a term of two years and until his successor is elected and qualified."

Following this the ballot contained the following: "AGAINST AN AMENDMENT to the City Charter of Boulder" (with the identical language of the paragraph above stated "FOR AN AMENDMENT").

It may readily be seen that the adopted amendment

removed six councilmen from office before the terms to which they were elected expired.

The charter of the city of Boulder provides that any elective officer may be recalled in accordance with the following provision:

"PETITION FOR RECALL. A petition signed by electors qualified to vote for a successor to the incumbent sought to be removed equal in number to at least twenty-five per cent of the last preceding vote cast within the city for all candidates for governor shall be addressed to the council and filed with the city clerk * * *. The petition shall contain a substantial statement of the grounds upon which the removal is sought."

It is not disputed that the petition in this case contained signatures in the amount of ten per cent of the last gubernatorial electors but did not contain at least twenty-five per cent of the last preceding vote for governor.

The system for removing an elected official thus provided excludes all other methods of removal. The removal of the six councilmen by this charter amendment is a circumvention of the only, and exclusive method prescribed. This is not a case of combining the duties of two or more elective offices in the interest of economy, nor is it a situation where the duties of the elective officers are changed. Therefore, where, as here, both the offices and duties remain the same, the amended charter results in nothing more than a device to unseat the incumbents and is invalid. These councilmen elected by the people, have a right to the full term of the office to which they were elected, unless recalled in accordance with the provisions of the city charter above set forth.

The trial court was in error in dismissing the action on the ground that the plaintiff had no capacity to sue and in holding that the ballot title here involved was a substantial compliance with the legal requirements, and sufficiently descriptive of the substance of the charter amendment and that the phrase in the ballot title,

"and substituting therefor a system of electing a board of nine councilmen," was broad enough to describe and include the changes, qualifications and powers of councilmen, as well as the changes in the election procedure; and that the charter amendment in limiting the term of office to two years was not a recall, but incidental to the adoption of a new system of representation on the city council.

██ Words could not be employed to demonstrate more clearly that the charter requirement means that the ballot title must be a clear and concise statement and descriptive of the substance of the proposed amendment. In considering the substance, it surely cannot be disputed that it failed to disclose drastic changes, namely, the reduction of the councilmanic term of office; that councilmen be taxpayers; reduction of the term of residence, and in effect, a recall of six of the elected councilmen. It is inconceivable that the average elector would understand or be familiar with sections 3, 4, 5 and 13 of the city charter; and when the voter voted for or against the amendment under the ballot title as submitted, he did so without knowing the effect of his vote one way or the other. The ballot title used contained and combined drastic changes, not related and interdependent; it did not separate each such change into a for-or-against proposal, whereby a voter could exercise independent judgment on each specific change. When it is said in the charter that the ballot title shall contain a clear, concise statement describing the substance of the proposed amendment, it is not to be read as meaning that in order to be concise there must be omissions of specific changes simply because more words would have to be used. The true meaning of this requirement is that no more, nor less, words be used than are necessary to state the proposal clearly and understandably. No convincing argument can be presented to dispute the fact that there were a number of unrelated propositions presented to the voters of Boulder by this amendment, and

they were presented as a single proposition without the voter having a chance to separate and accept or reject each such proposal. This was, in the language of the day, a "package deal." The voter had no choice but to vote for or against the entire combination, with the result that the ballot title used, being in clear violation of the provisions of Article XX of the state Constitution and of the charter of the city of Boulder, is invalid and the purported amendment to the charter adopted under such circumstance is of no force or effect.

Such being our conclusion, the judgment of the district court is reversed and the cause remanded with instructions to enter judgment for the plaintiff according to the prayer of his complaint.