Jack McCROSKEY, Martha F. Radetsky, Harold Dahlen, Helen Hopkins and Jeannine Atchison, Individually and on behalf of the Taxpayers and Citizens of the City and County of Denver, Colorado, Plaintiffs-Appellants,

v.

Carl H. GUSTAFSON, Quinn & Co., Inc., a New Mexico Corporation, and The City and County of Denver, a Municipal Corporation, Defendants-Appellees.

No. 79CA0360.

Colorado Court of Appeals, Div. II.

March 27, 1980.

Rehearing Denied April 17, 1980.

Certiorari Granted May 27, 1980.

Isaacson, Rosenbaum, Spiegleman & Friedman, P. C., Stanton D. Rosenbaum, Denver, Kelly, Haglund, Garnsey, Kahn & Donnell, Edwin S. Kahn, Denver, for plaintiffs-appellants.

Tallmadge, Tallmadge, Wallace & Hahn, P. C., David J. Hahn, Denver, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M., for Carl H. Gustafson, Quinn & Co., Inc., defendants-appellees.

Max P. Zall, City Atty., Robert M. Kelly, John L. Stoffel, Jr., Asst. City Attys., Denver, for The City and County of Denver, defendant-appellee.

BERMAN, Judge.

Plaintiffs appeal from the judgment of the district court granting defendants' motion for summary judgment. We affirm.

Carl Gustafson and Quinn & Co., Inc., (defendants) were bond consultants for the City and County of Denver (City) and in that fiduciary capacity assisted the City in numerous bond issues from 1971 through 1974. In November of 1975, Gustafson wrote to the Mayor proposing that the City take advantage of the strong municipal bond market. Essentially, Gustafson proposed that, because of the strength of the municipal bond market, the City issue tax-exempt bonds at a low interest rate which Quinn & Co. would purchase from the City. The City would then use the proceeds of the bond issue to purchase from Quinn & Co. federal securities which would yield a higher rate of interest. Gustafson represented that the interest differential would result in an arbitrage profit to the City which might be as high as $2,500,000 to $3,750,000. In his initial proposal to the Mayor, and in the formal contract that was signed and accepted by the Manager of Revenue, on behalf of the City on December 18, 1975, Gustafson expressly stated that he and his firm would be acting as principals and not as fiduciaries, and that they intended to make a profit on the sale of the federal securities to the City.

The transaction was complicated by Internal Revenue regulations which governed transactions of this nature. The I.R.S. recognized that arbitrage bond transactions permitted cities to realize profits at the expense of the U. S. Treasury, and, therefore, placed maximum ceilings on the amount of arbitrage profits a city could realize. To keep within the federal limits and thereby retain the federal tax-exempt status of the issued municipal bonds, the City and defendants agreed that the arbitrage profit was to be lowered by decreasing the effective interest rate on the federal securities by the City purchasing the securities from the defendants above par value. This over-payment represented the profit that the defendants had informed the City that they intended to make on the transaction. As a result of the subsequent transactions, the City refunded a 1974 Stadium bond issue and saved approximately $1.8 million. The defendants made a profit of $2.7 million on the sale of the federal securities to the City.

Plaintiffs, individual citizens and taxpayers residing in the City and County of Denver, made a demand upon the City to sue defendants to recover what plaintiffs characterized as "windfall profits" received by the defendants. The City declined to bring suit. Thereafter, plaintiffs brought this action alleging that Gustafson and Quinn & Co. were in a fiduciary relationship with the City which could not be unilaterally severed, and that they breached their fiduciary duty by failing to disclose the following material facts: that the City would receive less than $3,000,000 in arbitrage profit; that the defendants would receive $2.7 million in profit; and that there was an alternate method of complying with the I.R.S. arbitrage regulations whereby the federal government would receive the $2.7 million

"windfall profit" instead of the defendants. Plaintiffs further alleged that Quinn & Co. had a duty as a broker-dealer to disclose the above material facts, and finally that Gustafson, as a member of the General Assembly, had a duty not to be unjustly enriched at the expense of plaintiffs-taxpayers.

When the case was at issue, defendants moved for summary judgment. The district court assumed that the plaintiffs had standing and reached the merits of the case. The court granted defendants' motion on the grounds that the City realized the maximum arbitrage profit that it was entitled to under the then existing federal regulations, that there was no fiduciary relationship between the defendants and the City, and that, in any event, defendants had provided documents which fully disclosed the amount of profit that they expected to make on the transaction. Further, the court held that Gustafson's position as a state representative did not create a fiduciary relationship with the City.

■ Plaintiffs have appealed, again asserting the existence of a fiduciary duty, and the breach of that duty by defendants' failure to disclose material facts. Our affirmance is premised solely on the fatal jurisdictional infirmity caused by plaintiffs' lack of standing to bring this action as taxpayers on behalf of the City, and thus, we do not reach the substantive issues of the case. And, since the trial court rendered a correct judgment, a remand is not required. *Metropolitan Industrial Bank v. Great Western Products Corp.*, 158 Colo. 198, 405 P.2d 944 (1965).

■ Initially, we note that defendants challenged plaintiffs' standing to sue as taxpayers on behalf of the City in their answer, in their motion for summary judgment, and in their answer brief on appeal. Further, standing is a jurisdictional question, *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), and may be raised at any stage of an action. *Peaker v. Southeastern Colorado Water Conservancy District*, 174 Colo. 210, 483 P.2d 232 (1971); *Baker v. Denver Tramway Co.*, 72 Colo. 233, 210 P. 845 (1922). Therefore, this issue is properly before this court.

Colorado has long recognized the validity and necessity of taxpayers' suits on behalf of a municipality. *Ferch v. Hansen*, 115 Colo. 366, 174 P.2d 719 (1946); *McIntyre v. Board of County Commissioners*, 15 Colo. App. 78, 61 P. 237 (1900). In adopting this doctrine, however, the courts in Colorado have not articulated the prerequisites that a taxpayer must demonstrate in order to have standing to bring a suit on behalf of a municipal corporation.

■ Our Supreme Court has set forth the requirements for taxpayer standing to bring suit against the state. *Dodge v. Dept. of Social Services*, Colo., 600 P.2d 70 (1979); *see Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977). Those requirements consist of a two-part test which requires that taxpayer-plaintiffs allege: 1) injury to themselves in fact; and 2) that the injury was to a legal interest of the taxpayer which is protected by statutory or constitutional provisions.

The first part of the test was derived from the Colo.Const., Art. III, which prohibits one branch of government from usurping the powers of another branch. *Wimberly, supra.* As stated in *Wimberly, supra*, "[c]ourts cannot, under the pretense of an actual case, assume powers vested in either the executive or the legislative branches of government." Thus, a taxpayer-plaintiff must allege injury in fact to himself to assure both that the court is dealing with a case that is suitable for judicial resolution and that the court is not intruding into the executive or legislative domain.

The second part of the test is a "prudential rule of standing based on judicial self-restraint." *Wimberly, supra.* This part of the test requires that, even where a taxpayer has alleged injury in fact to himself, the courts must exercise judicial self-restraint to avoid interfering with legitimate policy decisions made by the legislative or executive branch, if that injury is not to a legal interest protected by statutory or constitutional provisions.

This test, however, is not functional in determining whether a taxpayer has standing to bring an action on behalf of a municipal corporation, as is the case here. While the same concerns discussed above are present in the case of taxpayers bringing an action on behalf of a municipality, the posture of such an action is sufficiently different such that the *Wimberly-Dodge* test would unduly restrict taxpayer standing in this context.

First, a taxpayer suing on behalf of a municipality would be hard pressed to establish the injury in fact to the taxpayer, caused by the municipality's refusal to sue, contemplated by the Court in *Wimberly* and in *Dodge*. Second, even if the taxpayer is able to clear this first hurdle, (injury in fact), there would be a paucity of circumstances in which the taxpayer could point to a specific statutory or constitutional provision protecting a legal interest of the taxpayer that the municipality's refusal to sue has injured. In short, taxpayer suits on behalf of a municipal corporation would be virtually precluded by application of the *Wimberly-Dodge* test.

■ Accordingly, we have formulated a separate test for suits such as the one at issue. In doing so, we adhere to the constitutional and policy considerations set forth in *Wimberly, supra* and in *Dodge, supra*. When a taxpayer's standing to sue on behalf of a municipality is at issue, it is his burden to allege, *Wimberly, supra*, facts sufficient to support a reasonable inference that he has satisfied the following requirements:

1) That the municipality itself has the right and power to bring the action. *Silver v. City of Los Angeles*, 245 Cal.App.2d 673, 54 Cal.Rptr. 203 (1966); *Agins v. City of University Heights*, 49 Ohio Op. 165, 108 N.E.2d 210 (1952); 18 *E. McQuillin, Municipal Corporations* § 52.17 (3rd ed. 1977). Also, before the taxpayer can bring an action in a representative capacity, he must also allege that he has made a demand upon the municipality, which demand the municipality has refused. *State ex rel. Cleveland City Council v. Cuyahoga County Bd. of Elections*, 40 Ohio App.2d 299, 318 N.E.2d 889 (1974); 18 *E. McQuillin*, § 52.17 and § 52.41; and,

2) That the taxpayer is bringing the action in a case in which the municipal corporation has the discretion to bring the action but has refused to do so because of fraud, collusion, bad faith, or *ultra vires* acts by the corporation, *Ferch, supra; Davison v. Board of County Commissioners*, 41 Colo. App. 344, 585 P.2d 315 (1978); *Silver v. City of Los Angeles*, 57 Cal.2d 39, 17 Cal.Rptr. 379, 366 P.2d 651 (1966); cf. *McNichols v. Denver*, 130 Colo. 202, 274 P.2d 317 (1954), or in which the municipality has a specifically enjoined, non-discretionary duty to bring the action but has failed to do so. *Harmon v. City and County of San Francisco*, 7 Cal.3d 150, 101 Cal.Rptr. 880, 496 P.2d 1248 (1972) (city sold vacant streets at 50% of market value despite statutory duty to sell such land at 90% of market price); *Grob v. Nelson*, 8 Wis.2d 8, 98 N.W.2d 457 (1959) (city not under non-discretionary obligation to recover damages from former city officials who had embezzled city funds where city had signed a release in consideration of restitution of embezzled funds); *Terry v. Bender*, 143 Cal.App.2d 198, 300 P.2d 119 (1956) (city failed to declare certain transactions involving an interested city official void, in violation of specific statutory duty to do so); 18 *E. McQuillin, supra*, § 52.17.

The first part of this test corresponds to the first part of the *Wimberly-Dodge* test. It requires that before a taxpayer may sue in a representative capacity on behalf of a municipality, the municipality itself must have suffered sufficient injury to give it a cognizable claim. This is the functional equivalent of requiring the taxpayer to allege an injury in fact to himself.

The second part of this test embodies the policy of judicial self-restraint. It permits taxpayer standing only where the municipality has refused to bring a non-discretionary action or where it has refused to bring a discretionary action because of fraud, collusion, bad faith, or *ultra vires* acts, and it recognizes that in all other cases the courts should refrain from interfering with the

exercise of executive or legislative discretion. *See Wimberly, supra.*

■ Even if we assume, *arguendo*, that plaintiffs satisfied the first part of the test, they did not satisfy the second part of the test, and therefore, we hold that they lack standing to bring this suit. Plaintiffs did not allege that the City refused to bring the action because of fraud, collusion, or bad faith, nor did they allege that the City had engaged in any *ultra vires* activities. Further, plaintiffs did not allege that the City was under a non-discretionary duty to bring an action against the defendants. Thus, under the test enunciated above, plaintiffs lack standing to sue on behalf of the City.

Plaintiffs rely heavily on *Ferch, supra,* to support their contention that they have standing to sue. However, the gravamen of the complaint in *Ferch* was that the City Manager of Health had disregarded City ordinances in awarding a contract for the collection of garbage. The plaintiff in *Ferch* thereby satisfied the second part of the test by alleging an *ultra vires* act by the City. Thus, plaintiffs' reliance on *Ferch* as being dispositive is misplaced.

Judgment affirmed.

PIERCE and RULAND, JJ., concur.