**Jack McCROSKEY, Martha F. Radetsky, Harold Dahlen, Helen Hopkins and Jeannine Atchison, individually and on behalf of the Taxpayers and Citizens of the City and County of Denver, Colorado, Petitioners,**

v.

**Carl H. GUSTAFSON, Quinn & Co., Inc., a New Mexico corporation, and The City and County of Denver, a municipal corporation, Respondents.**

No. 80SC109.

Supreme Court of Colorado, En Banc.

Dec. 7, 1981.

Isaacson, Rosenbaum, Spiegleman & Friedman, P. C., Stanton Rosenbaum, Kelly, Haglund, Garnsey, Kahn & Donnell, Edwin S. Kahn, Denver, for petitioners.

Tallmadge, Tallmadge, Wallace & Hahn, P. C., David J. Hahn, Denver, Rodey, Dickason, Sloan, Akin & Robb, P. A., William C. Schaab, Albuquerque, New Mexico, for respondents Gustafson and Quinn & Co., Inc.

Max P. Zall, City Atty., Robert M. Kelly, and John L. Stoffel, Jr., Asst. City Attys., Denver, for respondent The City and County of Denver.

ROVIRA, Justice.

Petitioners are citizens and taxpayers of the City and County of Denver (City). They challenge the ruling of the court of appeals which held that they lacked standing to bring an action on behalf of the City. *McCroskey v. Gustafson*, Colo.App., 611 P.2d 984 (1980). We granted certiorari in order to consider the ruling of the court of appeals. We affirm.

Carl Gustafson and his employer, Quinn & Co., Inc. (respondents), were bond consultants for the City and advised the City on a number of bond issues from 1971 through 1974. In late 1975 Gustafson recognized that a favorable bond market might provide a method for the City to refund a prior bond issue and make a substantial profit. He wrote a letter to the mayor of Denver suggesting that the City could make an arbitrage profit of between $2,500,000 and $3,750,000 by way of this transaction. In the letter he indicated that Quinn & Co. would be acting as an underwriter and would assume all opportunity for profit and all risk of loss as an underwriter. In the letter and in a formal con-

tract that was subsequently signed by the City, it was expressly stated that respondents would not be consultants, fiduciaries, or agents of the City for this transaction and intended to make a profit on the sale of federal securities to the City.

Gustafson's plan involved the City's issuance of low interest tax-exempt bonds which would be purchased by Quinn & Co. The City would then use the proceeds to purchase federal securities from Quinn & Co. which would yield a higher rate of interest than the tax-exempt bonds and thus provide the City with a profit. However, the Internal Revenue Service, recognizing the possibility of abuse inherent in this type of transaction, set limits on the amount of profit which a city could realize through this type of refunding. If the City exceeded the maximum profit, the tax-exempt status of its municipal bonds would be forfeited.[1]

In order to comply with these profit limitations, respondents sold the City federal securities at a price which was above par value. Thus, the City realized the maximum allowable profit of $1,800,000 without jeopardizing the tax-exempt status of its bonds while respondents made $2,700,000 on the sale of the federal securities to the City.

In their complaint the petitioners claim that: Gustafson was in a confidential relationship with the City; respondents were unjustly enriched because they breached their duty to disclose the amount of profit they expected to realize through the transaction; and there was an alternative means of accomplishing the bond financing which would have resulted in a payment of approximately $2,700,000 to the federal government. They further claim that Gustafson, as a member of the state legislature, violated his fiduciary duty to the people of the State of Colorado and the citizens of Denver by using the power and influence of his public office for private gain. By way of relief, they ask that punitive damages and attorneys' fees be assessed against re-

spondents and that judgment be entered in favor of the City for $2,700,000. The City was named as a defendant, but no claim for relief was made against the City.

Prior to bringing this action, the petitioners made demand upon the City to sue respondents for the recovery of the profit. The City refused to bring the action, so the petitioners filed suit individually and on behalf of the taxpayers and citizens of the City.

The trial court granted respondents' Motion for Summary Judgment and entered a Judgment of Dismissal in favor of the respondents and the City.

The court, after examining the pleadings, depositions, answers to interrogatories, and affidavits on file, found that respondents were acting as principals and not in a fiduciary capacity for the City; that it was readily ascertainable from the documents that respondents would make $2,700,000 profit over and above the amount that the City would receive; that under the Internal Revenue Code provisions the transaction was legal; and that the City could not receive any additional profit without jeopardizing the tax-exempt status of its securities.

The court, assuming *arguendo* that the petitioners had standing to bring the action, ruled that the City received all that it was entitled to receive and that Gustafson's position in the state legislature created no fiduciary relationship with the City and was immaterial to his dealings with the City.

Petitioners appealed the judgment of dismissal. The court of appeals affirmed on the ground that the petitioners lacked standing to bring the action on behalf of the City and thus did not reach the substantive issues of the case. *McCroskey v. Gustafson, supra.*

This case presents the following question: When do citizen-taxpayers have standing to bring an action on behalf of a municipality?

---

1. See section 103(c) of the Internal Revenue Code of 1954 for the provision which controlled this transaction.

The court of appeals set forth a two-part test to determine whether a taxpayer had standing to sue on behalf of a municipality. It held that it was the taxpayer's burden to allege sufficient facts to show that he has met the following requirements:

"(1) That the municipality itself has the right and power to bring the action.... Also, ... he must allege that he has made a demand upon the municipality, which demand the municipality has refused.... and,

"(2) That the taxpayer is bringing the action in a case in which the municipal corporation has the discretion to bring the action but has refused to do so because of fraud, collusion, bad faith, or *ultra vires* acts by the corporation, ... or in which the municipality has a specifically enjoined, non-discretionary duty to bring the action but has failed to do so."

*McCroskey v. Gustafson*, Colo.App., 611 P.2d at 987 (citations omitted).

The petitioners challenge the court of appeals' departure from the standing test established by this court in *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977), and reaffirmed in *Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979). They further argue, in the alternative, that the new test established by the court of appeals is erroneous because it focuses upon the reasons for the municipality's refusal to sue rather than upon the existence of fraud, collusion, bad faith or *ultra vires* in the challenged act itself. They claim that if the new test is adopted by this court it should be modified to reflect this distinction and to make it consistent with the test in other jurisdictions.[2]

We begin our analysis by reviewing several prior standing cases. *Wimberly v. Ettenberg, supra,* involved an action brought by bail bondsmen against a county judge

challenging a pretrial release program that allowed a criminal defendant to deposit 10% of the total amount of his bail as a condition of pretrial release. The standing inquiry established in *Wimberly* consisted of the following questions: (1) whether the plaintiff was injured in fact, and (2) whether the injury was to a legally protected right as contemplated by statutory or constitutional provisions. 194 Colo. at 168, 570 P.2d at 539. This test was applied in *Dodge v. Department of Social Services, supra. Dodge* was an action brought by citizens and taxpayers against the State of Colorado, seeking to enjoin the expenditure of public funds for nontherapeutic abortions.

The test approved in these two cases is grounded in a recognition of limitations on the power vested in the judiciary by the Colorado Constitution[3] and in considerations of judicial self-restraint and economy. The rationale underlying these standing requirements applies equally to all litigants. These factors are based upon constitutional as well as jurisprudential considerations.

In the case now before us, the court of appeals announced a separate test to be applied in suits in which citizen-taxpayers sought to bring a representative action on behalf of, and not against, a municipality. It recognized that the same constitutional and policy considerations controlled but held that the "*Wimberly-Dodge* test would unduly restrict taxpayer standing in this context," *McCroskey v. Gustafson*, 611 P.2d at 987, because of the difficulty in establishing injury in fact to the taxpayer and the "paucity of circumstances in which the taxpayer could point to a specific statutory or constitutional provision protecting a legal interest of the taxpayer that the municipality's refusal to sue has injured." *Id.*

2. The petitioners cite *Harman v. City and County of San Francisco*, 7 Cal.3d 150, 496 P.2d 1248, 101 Cal.Rptr. 880 (1972); *Silver v. City of Los Angeles*, 57 Cal.2d 39, 366 P.2d 651, 17 Cal.Rptr. 379 (1961); and 18 *E. McQuillin, The Law of Municipal Corporations* § 52.07 (3d ed. 1977) in support of this contention.

3. "In Colorado, Article III of the Colorado Constitution prohibits any branch of government from assuming the powers of another branch. Courts cannot, under the pretense of an actual case, assume powers vested in either the executive or the legislative branches of government." *Wimberly v. Ettenberg*, 194 Colo. at 167, 570 P.2d at 538.

Because the court of appeals recognized a difference between citizen-taxpayer suits against a municipality and citizen-taxpayer suits brought on behalf of a municipality, it tailored the standing inquiry to fit the latter circumstance while still adhering to the policy dictates embodied in *Wimberly* and *Dodge.*

The first part of the court of appeals' standing test is the "functional equivalent of requiring the taxpayer to allege an injury in fact to himself." *Id.* However, rather than examining the interest of the particular citizen-taxpayer who is before the court, this test focuses upon the municipality's right and power to bring suit and its refusal to do so upon the taxpayer's demand.

The second part of the court of appeals' standing test addresses the policies of judicial restraint and constitutional limitations on the exercise of judicial power. Here, rather than inquiring whether the injury was to a legally protected right as contemplated by statutory or constitutional provisions, the court of appeals framed the inquiry from the perspective of the power vested in the municipality in the particular case. Thus, it held that a taxpayer could bring the action when the municipality had discretion to bring the act but refused to do so because of fraud, collusion, bad faith, or *ultra vires* acts by the municipality.

Petitioners argue that by adopting this test the court of appeals is narrowing the class of plaintiffs who would be granted standing to litigate a claim on behalf of a municipality. They first contend that under the *Wimberly-Dodge* test they would be granted standing to bring this action. They assume that they could establish injury in fact and then argue that this injury was to a legal interest which is protected by statutory or constitutional provisions.

This argument is based upon petitioners' reading of *Colo.Const.* art. X, sec. 13. This provision provides:

"Making profit on public money—felony. The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law."

They argue that Gustafson, as a member of the state legislature, is a public officer and that this transaction with the municipality violates the public policy embodied in this provision. We disagree. Gustafson's position in the legislature is immaterial to his business dealings with the City, which are totally unrelated to his position as a member of the General Assembly. Furthermore, the constitutional provision cannot "properly . . . be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343, 355–56 (1975).

Petitioners next challenge the standing rule on the grounds that it is more restrictive than the rule enunciated in the treatise authored by *McQuillin* and employed in other jurisdictions. We disagree.

The test put forth by *McQuillin* states that a taxpayer's right to bring an action on behalf of a municipality is subject to the following conditions:

"(1) The municipality itself must have a clear right and power to sue; (2) a taxpayer cannot sue third persons in behalf of the municipality unless the bringing of such action is a duty devolving upon the municipal authorities, as to which they have no discretion and which they have refused to perform; (3) either a demand must have been made that suit be brought by the public officers of the municipality, or it must be alleged and shown that such demand would be unavailing; and (4) the action does not lie where it would be grossly inequitable to enforce the claim, nor where the basis thereof is a claim of the taxpayer's rather than that of the municipality."

18 *E. McQuillin, The Law of Municipal Corporations* § 52.17 (3d ed. 1977) (footnotes omitted).

These conditions are similar to those formulated by the court of appeals. However,

this test requires that the municipality have an affirmative duty to bring the action. It does not contemplate a taxpayer's action on behalf of the City when the City has no duty to bring the action and the bringing of the action is within the discretion of the municipality.

The test established by the court of appeals, on the other hand, does allow a taxpayer to bring suit on behalf of a municipality if the municipality has the "discretion to bring the action but has refused to do so because of fraud, collusion, bad faith, or *ultra vires* acts by the corporation." *McCroskey v. Gustafson*, 611 P.2d at 987. Thus, this test is not narrower than the one established in *McQuillin* and in fact encompasses a wider range of circumstances than the *McQuillin* test.

Petitioners next claim that the test in other jurisdictions focuses upon fraud, collusion, bad faith, or *ultra vires* acts in the underlying transaction rather than on the municipality's refusal to exercise its discretion to bring suit because of these factors. The rule in California is that a taxpayer may bring an action on behalf of a municipality in cases involving fraud, collusion, *ultra vires*, or failure of the municipality to perform an affirmative duty to bring suit. *Harman v. City and County of San Francisco*, 7 Cal.3d 150, 496 P.2d 1248, 101 Cal.Rptr. 880 (1972); *Silver v. City of Los Angeles*, 57 Cal.2d 39, 366 P.2d 651, 17 Cal.Rptr. 379 (1961).

■ However, the rule established by the court of appeals in this case provides a better standing inquiry because it focuses directly upon the municipality's exercise of its discretion or refusal to perform a duty to bring suit. The existence of fraud, collusion, bad faith, or *ultra vires* acts in the underlying transaction is not a helpful criterion for the court to employ in deciding whether it should grant taxpayer standing. Rather, the court should consider why the municipality refuses to exercise its discretion under these circumstances. Undoubtedly, there will be cases in which municipal officials will be involved in fraud, collusion, bad faith, and *ultra vires* acts; and this will

carry over into their decision on whether or not to bring suit against themselves. However, it will not always be the same officials deciding whether to bring an action; thus, the court should focus on the reason for the municipality's failure to exercise its discretion to bring suit.

The test established by the court of appeals provides a sound basis to decide the standing question in a suit brought by a citizen-taxpayer on behalf of a municipality. We adopt that test here.

■ We agree that these petitioners lack standing to bring this action. There was no injury to the City nor was there any allegation of fraud, collusion, bad faith, or *ultra vires* acts which affected the City's decision not to bring suit.

We affirm.

ERICKSON and QUINN, JJ., dissent.

DUBOFSKY, J., does not participate.

ERICKSON, Justice, dissenting:

I respectfully dissent from the majority opinion and join the dissent of Justice Quinn.

The majority test for taxpayer standing has two requirements. First, the plaintiff-taxpayers must establish "that the municipality itself has the right and power to bring the action," and that the demand on the municipality to bring suit has been refused. Second, "that the taxpayer is bringing the action in a case in which the municipal corporation has the discretion to bring the action, but has refused to do so because of fraud, collusion, bad faith, or *ultra vires* acts by the corporation, . . . or in which the municipality has a specifically enjoined non-discretionary duty to bring the action but has failed to do so." *See McCroskey v. Gustafson*, Colo.App., 611 P.2d 984, 987 (1980).

In my opinion, the majority has charted a course which imposes an impossible burden on a plaintiff-taxpayer who brings a class action pursuant to C.R.C.P. 23. I concede that the first requirement imposed by the majority is sound and is a proper require-

ment to establish standing. However, I take exception to the second requirement. Fraud, collusion, bad faith, or *ultra vires* acts by the municipality, if such exists, will be known to the municipality, its officers and employees, but the facts establishing misconduct will be beyond the reach of the taxpayer in most instances. C.R.C.P. 11 requires that when a lawyer files a pleading, his signature constitutes a certificate by him that he has read the pleadings and that, to the best of his knowledge, information, and belief, there are good grounds to support it. A lawyer, therefore, would be required, if he pled fraud, collusion, or bad faith, to have factual knowledge of the reasons behind the failure of the city to affirmatively exercise a discretionary right before a complaint could be filed.

The majority recognizes that we are foreclosed from addressing the merits of the controversy before us in determining the issue of standing. *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977). All that lies before us for resolution is whether the plaintiff-taxpayers, looking to the class action provisions of C.R.C.P. 23, have the requisite standing to have the court consider their claim. It is inconceivable to me that the fact would be available to establish that a municipality was guilty of fraud, collusion, or bad faith in failing to file a discretionary action on behalf of a municipality. *Ferch v. Hansen*, 115 Colo. 366, 174 P.2d 719 (1946); *Howard v. City of Boulder*, 132 Colo. 401, 290 P.2d 237 (1955); *Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979), all indicate that the plaintiffs had standing in this case.

In my view, standing is a threshold requirement that should not be so burdensome as to deny bona fide plaintiffs access to the court to enforce legitimate and legally cognizable grievances. In this case the district court recognized that the plaintiffs had standing to bring this action and reviewed the merits and concluded that summary judgment should issue for the defendants. In denying the plaintiffs access to the court, we have drawn too fine a line.

Accordingly, I join in the dissent filed by Justice QUINN.

QUINN, Justice, dissenting:

I respectfully dissent. Although the complaint might be construed as setting forth claims on behalf of the plaintiffs in their individual capacity as taxpaying residents of the City and County of Denver, *see Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979), I accept the majority's characterization of the complaint as a representative action on behalf of the city. However, I disagree with the majority's conclusion that the complaint fails to allege any injury to the city. I also disagree with the rule adopted by the majority that as a condition of standing the plaintiffs must allege sufficient facts to show the city's refusal to bring suit was the result of fraud, collusion, bad faith or an *ultra vires* act.

The purpose of any inquiry on standing is to determine whether a plaintiff has a sufficient legal stake in the controversy to ensure a vigorous presentation of the case. *E.g., Harman v. City and County of San Francisco*, 7 Cal.3d 150, 496 P.2d 1248, 101 Cal.Rptr. 880 (1972); *L. Tribe, American Constitutional Law* 79 (1978). A review of the complaint leads me to conclude that the plaintiffs have standing to sue based on the following allegations: (1) the existence of a cause of action by the city against the defendants for tortious misrepresentation arising out of a confidential relationship; (2) substantial unjust enrichment to the defendants; (3) a demand by the plaintiffs on the city to bring an action against the defendants; and (4) the city's refusal to litigate without advancing a good and sufficient reason for its refusal. Since the plaintiffs in this case have pled sufficient facts to establish their standing, the burden of pleading and establishing their lack of standing should have been on the defendants.

I.

The traditional rule of standing in Colorado is that the complaint must allege an injury in fact to a legally protected interest.

*E.g., Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). In determining whether an injury in fact has been established the court must accept the allegations of the complaint as true. *E.g., Board of County Commissioners v. City of Thornton,* Colo., 629 P.2d 605 (1981). These allegations must then be analyzed to determine whether the injury is to a legally protected interest. Tortious conduct, a breach of a fiduciary duty, legal or equitable fraud, and other forms of misconduct are cognizable at common law and may be redressed by various forms of judicial relief. These forms of illegal conduct may affect adversely the legal interests of municipal government and its taxpaying citizens just as severely as a statutory or constitutional violation.

The plaintiffs in this case are resident-taxpayers of the city and sue on behalf of themselves and all interested taxpaying citizens. The named defendants are Carl H. Gustafson (Gustafson) and Quinn & Company, Inc. (Quinn & Co.). At all times pertinent to the transactions alleged in the complaint Gustafson was the vice president of Quinn & Co., which was a licensed broker dealer as defined under the Colorado Securities Act. On March 27, 1978 the plaintiffs through their counsel made demand on the City and County of Denver (city) to sue for recovery of monies received by Gustafson and Quinn & Co. but the city, by and through its mayor, refused to take legal action. Because of the city's refusal to sue or to join the action as a plaintiff, it has been named as a defendant, C.R.C.P. 19(a), with no claim being stated against it.

The factual allegations of the complaint are as follows. For several years prior to December 1975, Gustafson had been a paid bond consultant and fiscal agent to the city, holding himself out as a bond expert and bond counsel for the city. He enjoyed a favorable reputation among municipal officials with respect to his ability, knowledge and expertise in the field of municipal bond financing and municipal financing in general. During this period of time Gustafson

encouraged city officials to rely on him in matters of municipal funding and financing. On or about December 8, 1975, Gustafson approached the mayor with a proposal for the refinancing and refunding of outstanding municipal bond issues. Thereafter, he represented to members of the city council and other city officials that the city and its taxpayers would save $3,000,000 by his proposal. He further emphasized that time was of the essence and the refunding must be accomplished prior to December 31, 1975. City officials instructed Gustafson to proceed with his proposal. Notwithstanding a confidential relationship with the city over the years, Gustafson and Quinn & Co. failed to disclose to members of the city council or city officials the following facts: (1) that Gustafson and Quinn & Co. would receive a windfall of approximately $2,700,000 from the bond refunding transaction; (2) that there was available an alternative means of bond refinancing which would have resulted in the payment of $2,700,000 to the federal government, rather than a windfall to Gustafson and Quinn & Co.; (3) that their windfall of $2,700,000 would exceed the present value of the proposed saving to the city; (4) that the present value of the refunding proposal was substantially less than $3,000,000 and, in fact, was substantially less than the $2,700,000 to be received by Gustafson and Quinn & Co.

The complaint alleges that Gustafson, due to his confidential relationship with the city over many years, had an obligation to disclose these matters to the city council and to city officials and as a result of his failure to do so Gustafson and Quinn & Co. were unjustly enriched in the amount of $2,700,000.[1] The plaintiffs pray for damages for the benefit of the city in the amount of $2,700,000, plus exemplary damages, reasonable attorney fees and costs.

That the city has suffered no out-of-pocket loss is not to say that it has sustained no injury to a legally protected interest. The plaintiffs' claims for unjust enrichment are based on Gustafson's alleged abuse of a

---

1. Plaintiffs also allege that Gustafson breached his constitutional duty as a state legislator not to make a profit directly or indirectly out of city money. *Colo.Const.* Art. X, Sec. 13.

longstanding confidential relationship with the city in failing to disclose material facts. In a confidential relationship a person has a duty not only to avoid making false representation but, as pertinent here, has a duty to disclose all material facts which in equity and good conscience should be disclosed. *See, e.g., Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937). Such nondisclosure, if established, may entitle the city to a money judgment or the imposition of a constructive trust to the extent of the defendants' unjust enrichment. *See, e.g., United States v. Kearns*, 595 F.2d 729 (D.C. Cir.1978); *County of Cook v. Barrett*, 36 Ill.App.3d 623, 344 N.E.2d 540 (1976); *Restatement of Restitution* § 197 (1937).

If the majority's finding of no injury to the city is based on a consideration of adverse tax consequences in the event of favorable judgment for the city, the majority in effect is indulging in the type of ultimate fact finding which has no place in determination of standing. As this court observed in *Wimberly v. Ettenberg, supra*, 194 Colo. at 168, 570 P.2d at 539, the question "whether the injury resulted from the alleged action of the defendant ... is properly reserved for the trier of fact and is the primary question to be resolved on the merits." The complaint in this case clearly alleges an injury in fact to a legally protected interest of the city.

## II.

Turning to the standing requirement adopted by the majority, I believe this requirement sets up an undesirable obstacle to a taxpayer's representative lawsuit for redress of alleged wrongdoing by third parties acting in a confidential relationship to the city. The majority imposes on the taxpaying plaintiffs the requirement that they allege sufficient facts to show fraud, collusion, bad faith or *ultra vires* in the city's decision not to bring an action against the defendants. Such a requirement, however, is both unnecessary and impractical.

It is unnecessary because the allegations of the complaint already have pled sufficient facts to establish the plaintiffs' "legal stake" in the controversy. The plaintiffs have alleged a tortious misrepresentation and breach of a confidential relationship by the defendants in their business dealings with the city and have pled a demand on the city to sue which has been summarily rejected. If the plaintiffs prevail on the merits against the defendants for an accounting of profits, "recovery of those profits would necessarily reduce, *pro tanto*, the amount of taxes which the plaintiff and other taxpayers would otherwise have to pay." *City of Chicago ex rel. Cohen v. Keane*, 64 Ill.2d 559, 563, 2 Ill.Dec. 285, 287, 357 N.E.2d 452, 454 (1976). Moreover, the allegations of the complaint exceed the requisites of standing previously established by this court for a taxpayer's suit in *Ferch v. Hansen*, 115 Colo. 366, 174 P.2d 719 (1946). In that case citizen-taxpayers commenced an action on behalf of themselves and all other taxpayers seeking to set aside an allegedly illegal contract between the City and County of Denver and Hansen for garbage collection services. The complaint, seeking to hold Hansen accountable to the city for all monies previously collected and received under the contract, alleged that "a demand upon said City and County of Denver and its duly authorized and responsible agents to bring this action, or any other action designed to afford the relief herein prayed, would be wholly futile and unavailing." 115 Colo. at 374, 174 P.2d at 723. In addressing the issue of standing this court stated:

"May the suit be maintained by a taxpayer? We are persuaded that the answer should be in the affirmative. The allegations make clear that the municipality, as such, does not purpose, nor through the years has it proposed, to proceed on the theory that illegality attends the contracts involved, or any of them, but, on the contrary, by its act of opposition to this suit, below and here, it unquestionably makes common cause with defendant Hansen, the contract beneficiary. Considering the plaintiff's grave allegations, the manifest attitude of the city itself in relation thereto, the potential consequences involved, and the cir-

cumstances generally, we may not, becomingly, as we are persuaded, give countenance to a judgment that precludes judicial inquiry in the premises. [Colo.] Const.Art. II, § 6. The taxpayer here, proceeding at his own expense, and at the risk of judicial visitation of burdens incident to failure, disinterestedly prays recovery in behalf of defendant city, that is to say, for all taxpayers." 115 Colo. at 380, 174 P. at 726.

For purposes of standing, I see no difference between a surrogate action on behalf of the city against a third party where, as in *Ferch v. Hansen, supra,* the city is a party to an arguably illegal contract and refuses to sue for municipal monies paid out under the contract and, where, as here, the city allegedly is an unwilling victim of the third party's non-disclosure and breach of confidential relationship and refuses to redress the unjust enrichment.

In addition to being unnecessary, the majority's rule on standing is impractical. It requires the plaintiffs to establish misconduct on the part of the city in its decision not to litigate the city's claim. The reasons for the city's refusal to sue, however, involve subjective matters which are within the unique knowledge of the city. Requiring the plaintiffs to plead and establish these subjective factors as a condition of standing creates an insurmountable barrier to a taxpayer's representative action. I would hold that taxpayer-citizens establish a prima facie case of standing when the complaint alleges, as here, a colorable claim of tortious misrepresentation and breach of a confidential relationship by third parties against the city, with a resulting and substantial unjust enrichment to the third parties, and further pleads that the plaintiffs have made a formal demand on the city to litigate but the city has refused without advancing any reason in support of its refusal. Under such circumstances any challenge to the plaintiffs' standing should be a matter of defense and the court then should resolve the standing issue under C.R.C.P. 12(c), with the burden devolving upon the party who contests standing.

Although the defendants raised the issue of the plaintiffs' lack of standing, neither the city, which is a party defendant, nor Gustafson and Quinn & Co. offered any reason whatever for their assertion that somehow the plaintiffs lack standing to sue. Since the defendants failed to meet their burden of establishing the plaintiffs' lack of standing, the plaintiffs should be permitted to litigate their claims on behalf of the city.

Just as taxpaying citizens have legal standing on the basis of their interest in insuring "the form of government under which [they live] be in accord with the state constitution," *Dodge v. Dept. of Social Services, supra,* 198 Colo. at 382, 600 P.2d at 71; *see also Howard v. City of Boulder,* 132 Colo. 401, 290 P.2d 237 (1955), so too they have a cognizable legal interest in protecting their municipal government against colorable tortious misrepresentation resulting in unjust enrichment to the alleged wrongdoers especially when the government declines to take protective action on its own behalf and offers no reason for its inaction. When official action is challenged on grounds of illegality, whether the illegality be by governmental officials or others, values beyond tangible economic injury come powerfully into play and, if anything, the standing of citizens to redress the wrong should be broadened rather than narrowly circumscribed.

> "Both the value of legality as such, and the public respect which rests on it, may be seriously impaired whenever courts equipped to remedy an illegality at the behest of a factually injured party allow clearly illegal procedures or results to stand on the sole ground that all of the material interests required to be considered or 'accommodated' by the statutory (or even constitutional) scheme were satisfied with the official action." *L. Tribe, American Constitutional Law,* 111–12 (1978).

To engraft the standing requirement adopted by the majority onto Colorado law is, in effect, to deny redress for clearly cognizable claims which, if true, can be vindicated in no other forum.

### III.

The trial court in this case granted summary judgment in favor of the defendants, not on the issue of standing, but on the merits of the controversy. Neither the court of appeals nor this court has addressed the question whether summary judgment was properly entered. I believe the judgment of the court of appeals should be reversed on the issue of standing and the cause returned to that court for consideration of whether the trial court erred in granting the defendants' motion for summary judgment on the merits of the controversy.