**EAST LAKE CREEK RANCH, LLP, A Colorado limited liability partnership, Plaintiff–Appellee and Cross–Appellant,**

v.

**Robert BROTMAN, State Board of Land Commissioners, and the State of Colorado, Defendants–Appellants and Cross–Appellees.**

No. 98CA0653.

Colorado Court of Appeals, Div. IV.

Aug. 5, 1999.

Rehearing Denied Oct. 21, 1999.

Certiorari Granted May 15, 2000.

Fairfield and Woods, P.C., Robert S. Sloskey, Denver, Colorado; Dunn, Abplanalp & Mauriello, P.C., John W. Dunn, Vail, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Duncan, Ostrander & Dingess, P.C., Donald M. Ostrander, and Ronald E. Vonlembke, Denver, Colorado, for Defendant–Appellant and Cross–Appellee Robert Brotman.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, D. Edgar Hamrick, Assistant Attorney General, Denver, Colorado, for Defendant–Appellant and Cross–Appellee State Board of Land Commissioners· and State of Colorado.

Opinion by Judge PLANK.

In this action for declaratory and injunctive relief, defendants, Robert Brotman, State Board of Land Commissioners (Board), and the State of Colorado, appeal from the trial court's injunction barring Brotman and the Board from completing their "land exchange" agreement. The Board also appeals the trial court's ruling which acknowledged the standing of plaintiff, East Lake Creek Ranch (ELCR), as a taxpayer to challenge that exchange. Plaintiff cross-appeals the court's denial of standing on the basis of its right as owner of adjacent property. We affirm.

I.

We first address the issue of whether ELCR has standing to challenge the Board's agreement with Brotman by which he would acquire a patent to certain state school land.

The Board contends that the trial court erred in relying on *McCroskey v. Gustafson*, 638 P.2d 51 (Colo.1981) to find that ELCR had standing as a taxpayer to bring this suit. Instead, the Board argues that principles of trust law should govern and, as thereunder ELCR is at most an incidental beneficiary of the school land trust, it lacks standing. We are not persuaded.

Our *de novo* review, *see Brown v. Board of County Commissioners*, 720 P.2d 579 (Colo. App.1985), leads us to reach the same result as the trial court, though for different reasons. Thus, we do not disturb its ruling. *See Utah International, Inc. v. Board of Land Commissioners*, 41 Colo.App. 72, 579 P.2d 96 (1978).

A.

We agree with the Board that *McCroskey* specifically sets forth a test by which to determine taxpayer standing to bring a representative action on behalf of a municipal corporation. And, we decline to extend *McCroskey* to reach the facts here.

The *McCroskey* test was formulated precisely because the standing requirements set forth in *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977) for taxpayer actions against the state were determined not functional in the context of a taxpayer suit on behalf of a municipality. *See McCroskey v. Gustafson, supra.*

Thus, here, because defendant Board is a state agency, *see Sunray Mid–Continent Oil Co. v. State*, 149 Colo. 159, 368 P.2d 563 (1961), we conclude that *Dodge v. Department of Social Services*, 198 Colo. 379, 600 P.2d 70 (1979) is the more appropriate basis for a determination of ELCR's standing.

The *Dodge* court reaffirmed *Wimberly*, which announced that the proper inquiry in determining standing is whether a plaintiff has suffered an injury-in-fact to a legally protected interest as contemplated by statutory or constitutional provisions. In applying that test to the facts in *Dodge*, our supreme court found that the second criterion was met by plaintiff's averment that acts by the state defendant had violated the Colorado Constitution and exceeded the department's statutory authority.

In its consideration of the first component of the *Wimberly* test, the *Dodge* court then determined that an injury-in-fact may be found in the absence of direct economic injury. *See Howard v. City of Boulder*, 132 Colo. 401, 290 P.2d 237 (1955) (although proposal to amend city charter had no adverse economic effect on plaintiff, he had standing because of his interest that the form of government under which he lived be in accord with the state constitution); *see also Colorado State Civil Service Employees Ass'n v. Love*, 167 Colo. 436, 448 P.2d 624 (1968) (petitioners state a justiciable controversy because they claim violation of the state constitution).

Similarly, here, ELCR alleged in its complaint that the Board acted *ultra vires* in exercising its statutory and constitutional authority by entering this real estate agree-

ment. Specifically, ELCR argued that defendants' "exchange" was in reality a sale of property, which did not adhere to the requirements of Colo. Const. art. IX, § 10, or § 36–1–124, C.R.S.1998. ELCR further alleged that the appraised value of the parcel was far below the fair market price and, thus, that the Board had effectively made a donation to Brotman in violation of Colo. Const. art. XI, § 2.

These allegations are sufficient under *Dodge* to confer taxpayer standing on ELCR to bring this action against a state agency.

### B.

■ Our review of the facts in the context of trust principles does not, in our view, negate ELCR's standing.

Through the Colorado Enabling Act, Congress conveyed land to the state for support of the common schools. The language of the Act has been found sufficient to indicate the settlor's intent "to create a fiduciary obligation for the state of Colorado to manage the school lands in trust for the benefit of the state's common schools." Colorado Enabling Act § 7; *Branson School District RE–82 v. Romer*, 161 F.3d 619, 634 (10th Cir.1998).

Colorado's 1876 Constitution met the obligation by creating a state agency to manage all of the federal lands that had been granted under the Act. Colo. Const. art IX, § 10 (State Land Board has duty to provide for location, protection, sale or other disposition of all lands under such regulations as may be prescribed by law). The Board has been characterized as a managing landlord. *Harrah v. People*, 125 Colo. 420, 243 P.2d 1035 (1952).

■ In doing so, the state did not relinquish its trusteeship to the state agency. *See Walpole v. State Board of Land Commissioners*, 62 Colo. 554, 163 P. 848 (1917) (The Board does not in any sense stand in the position of an owner. It is an agent, with a duty to do no less, and power to do no more, respecting the disposition of State lands under its control, than is statutorily provided).

■ We further note that the composition and structure of the Board, its allocation of school funds, management principles, and the scope of its duties are subject to determination by Colorado voters. *See Branson School District RE–82 v. Romer, supra.*

■ The state holds the school trust lands "in a perpetual, inter-generational *public trust* for the support of public schools, which should not be significantly diminished." Colo. Const. art. IX, § 10(1) (emphasis added). Accordingly, the members of the public at large, through the institution of the public schools, are the intended beneficiaries of the trust. *See* 89 C.J.S. *Trusts* §. 19 (1955); 67 C.J.S. *Officers and Public Employees* § 3 (1978).

Thus, we cannot say that ELCR is a mere "incidental beneficiary" precluded from bringing an action in regard to the operation of the state's trust.

Finally, because we have determined on other grounds that ELCR has standing to bring this action, we do not address its cross-appeal, which asserted standing as an adjacent property owner.

### II.

Both Brotman and the Board contend that the trial court erred in its finding that the agreement was the "functional equivalent of a sale." In support of this contention, defendants argue that the agreement constituted an exchange of real estate, which was not defeated by the $1,800,000 appraisal value assigned or by any delayed acquisition of replacement property. We are not persuaded.

■ The decision to grant or deny injunctive relief lies within the sound discretion of the trial court. *See City of Colorado Springs v. Blanche*, 761 P.2d 212 (Colo.1988). However, interpretation of a written contract is a question of law subject to *de novo* review. Hence, we need not defer to the trial court's interpretation of the agreement upon which the court's injunction was based. *See Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994).

■ While it is our duty to interpret a contract in a manner which effectuates the manifest intention of the parties at the time

the contract was signed, *see Roemmich v. Lutheran Hospitals & Homes Society*, 934 P.2d 873 (Colo.App.1996), we also note that an unambiguous contract should be enforced according to the express provisions, with the words given their plain and generally accepted meaning. *Humphrey v. O'Connor*, 940 P.2d 1015 (Colo.App.1996).

■ A longstanding test for determining whether a transaction constitutes a sale or exchange is whether there is a fixed value at which the exchange is to be made; if there is a fixed value, it is a sale. *See Fain Land & Cattle Co. v. Hassell*, 163 Ariz. 587, 790 P.2d 242 (1990); *see also Gill v. Eagleton*, 108 Neb. 179, 187 N.W. 871 (1922) (if the bargain is made and the value of the land parted with is measured in money terms and the land is paid for in money or in something the parties agree to treat as having a fixed and definite value in money, the transaction is a sale).

■ Admittedly, the mere fact that a price is placed on the properties involved in an exchange does not render the transaction a sale where the price fixed is evidently for the purpose of constituting a basis on which the exchange may be made. However, where the price is determined for the purpose of fixing definitely the value of the respective properties involved in the purported exchange, that determination is conclusive that a sale, not an exchange, has occurred. 33 C.J.S. *Exchange of Property* § 2(b) (1998); *see Higbie v. Johnson*, 626 P.2d 1147 (Colo. App.1980); *see also Hamburger v. Berman*, 203 Mich. 78, 168 N.W. 925 (1918) (contract held to be exchange of two properties where values fixed by the respective parties upon the properties were mere estimates and were merely for the purpose of effecting an exchange).

■ Here, defendants agreed upon an appraiser and the $1,800,000 appraised value of the school land. That value also established the maximum price of the land or lands to be later acquired by the Board as replacement property.

Further, Brotman's only immediate obligation under the agreement was to tender four irrevocable deposits amounting to the $1,800,000 appraisal value plus appraisal costs. Once he met this obligation, the agreement granted him possession and control as well as the authority to initiate condemnation proceedings for a private way of necessity.

Finally, and contrary to Board policy in effect at the time, Brotman was in control of when he would receive the state patent. The transaction closing could occur on the date of Brotman's final deposit or upon his sixty-day prior written notice to the Board.

Hence, we find that defendants' appraisal determined the fixed value of the transaction and, thus, the agreement constituted a sale of real estate.

The fact that the agreement restricted the Board's eventual expenditure of the escrow funds for only replacement property does not bring the transaction within the definition of an exchange.

Our determination is supported by the Colorado constitutional amendment passed by Colorado voters in November 1996, which specifically authorized and detailed guidelines for the Board's participation in non-simultaneous land exchanges. Contrary to the open-ended agreement here, that amendment clearly requires that "the purchase of lands to complete such an exchange *shall be made within two years* of the initial sale or disposition." Colo. Const. art. IX, § 9(7) (emphasis supplied).

Further, we note that Internal Revenue Code criteria, established for purposes of distinguishing taxable sales of land from exchanges, also preclude purely open-ended transactions.

The Code is flexible in accommodating situations, as advanced here by the Board, wherein the buyer of lands may not have at the time of transfer a replacement property desired by the seller. However, to qualify as an exchange under the Code, both parcels of property involved must be identified and the exchange completed within specified time frames. *See* 26 U.S.C. § 1031 (1995) (exchanges may be non-simultaneous, but replacement property must be identified within a 45-day time frame and the exchange completed not more than 180 days after transfer of the initial parcel); *see also* 14 R. Powell, *Powell on Real Property* § 83A.04(8)(b) (1995).

Here, while defendants' agreement required the simultaneous exchange of "any deed(s) conveying the Replacement Property" at the time of closing, the parties did not state a deadline for, or make Brotman's receipt of the patent contingent upon, any such acquisition. That this terminology did not mandate a title exchange of some or all of the replacement property at closing is supported by later provisions detailing the manner in which the Board would direct the expenditure of remaining escrow funds.

Further, while Brotman agreed to cooperate, if requested, in the acquisition and conveyance of replacement property, that acquisition was within the sole discretion and control of the Board. His attendance at an escrow closing of the replacement property was only upon the Board's request.

Thus, because we find that the agreement constituted a sale of school land transacted in violation of § 36–1–124, C.R.S.1998, we need not address defendants' remaining contentions on appeal.

Accordingly, the injunction is affirmed.

Judge BRIGGS and Justice ERICKSON, * concur.